# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 6, 2008

Charles R. Fulbruge III
Clerk

No. 07-20401

LANCE GERARD BIAGAS

Petitioner-Appellee

V.

KIM VALENTINE, Interim Director Harris County Department of
Community Supervision and Corrections

Respondent-Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. H-06-CV-668

Before WIENER, BARKSDALE, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Petitioner-Appellee Lance Biagas petitioned the district court for a writ of habeas corpus, asserting that his state court trial and conviction violated his constitutional right to effective assistance of counsel. The district court granted Biagas relief on that basis as well as on the alternative basis of judicial error by the state trial court. Respondent-Appellant Kim Valentine appeals the district court's grant of habeas relief, insisting, inter alia, that Biagas was not prejudiced

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

by his defense counsel's performance and that the district court erred by sua sponte recognizing judicial error as an alternative ground for relief. We affirm the district court's grant of Biagas's petition on the basis that he was denied effective assistance of counsel.

## I. FACTS AND PROCEEDINGS

This case centers on a series of failures in the voir dire process that resulted in Victor Gamboa's presence on the jury that convicted Biagas. At the time of Biagas's trial, Gamboa was a Harris County Sheriff's Deputy. Harris County was the victim of the criminal scheme in which Biagas allegedly took part,[1] and the investigators, prosecutors, and two of the witnesses who testified against Biagas were Harris County officials. During voir dire, Biagas's defense counsel Reginald McKamie asked Gamboa whether he thought that "all sheriffs or all policemen tell the truth all the time." Gamboa responded, "Yes. They made an oath." When asked whether he would believe Officer McAnulty—a Harris County law enforcement officer scheduled to testify at Biagas's trial—over Lance Biagas, Gamboa replied, "I'm going to be partial," and then clarified, "I'm going to believe [Officer McAnulty]." McKamie then asked the jury pool whether any of them believed that a police officer's word was superior to anyone else's, and three others responded affirmatively. The state trial judge then stated, "[I]f you really in your heart believe that [police officers are] entitled to more believability than any other person, then you certainly should not sit on the jury." At the conclusion of McKamie's questioning, he and the prosecutor discussed and then submitted to the trial judge the names of their agreed-on strikes for cause, which list did not include Gamboa. The trial judge and counsel then repaired to chambers, where individual jurors theretofore challenged for cause (but who had not been agreed to by the parties) were called in for further

---

[1] Biagas was alleged to be one of several conspirators in a scheme to defraud Harris County. He was tried and convicted for felony theft in Texas state court.

questioning outside the presence of the jury pool. Gamboa was not called into chambers or challenged by either party. Notably, McKamie challenged prospective jurors Krumlauf and Lemer, who, like Gamboa, had expressed bias in favor of law enforcement testimony. The court ultimately granted McKamie's challenge of Krumlauf but denied that of Lemer after Lemer stated that she would wait to hear a police officer's testimony before determining whether the officer was credible.

Following the in-chambers voir dire and the resolution of the challenges for cause, both parties submitted their peremptory strikes; McKamie used one of his ten on Lemer but he did not strike Gamboa. Thereafter, the court instructed the clerk to name the jury, but the clerk mistakenly called thirteen jurors into the box, rather than twelve. Gamboa was the twelfth of the thirteen jurors called.

When the jurors came forward—but before anyone realized that one too many had been called—the court asked the parties whether they were satisfied with the seating of the jury. At that time, McKamie requested to approach and, on reaching the bench, said, "Your Honor, there was an oversight. I thought [Gamboa] had been stricken for cause." McKamie elaborated, "[Gamboa's] a police officer. He testified that he would have police officers ahead of anybody else; and I thought he had been stricken for cause, Your Honor." The trial judge responded, "I'm sorry. I can't—I can't do anything about it."

Following this exchange, the bailiff realized that thirteen jurors had been called, and the trial judge then excused the juror who was mistakenly called. Once this confusion was resolved—but before the jury was sworn and the remainder of the pool was excused—McKamie reiterated his oversight, stating:

> Your Honor, before the jury is sworn in, I would like to object to [Gamboa], the officer. He has clearly stated that he is biased toward police officers, and it was an oversight. When we were doing it, I thought he was on our list of agreed strikes. I think it will result in

an impartial [sic] jury that will be biased against my client and I move that we have a mistrial . . . .

The court overruled the motion, stating that it had "called out the numbers that we agreed upon four different occasions, and [Gamboa's] never on my list as to be called up for cause or for any other reason he was not stricken, so it's overruled, Counsel."[2]

At trial, the State presented the testimony of two Harris County law enforcement officers: Captains Jesse Mack and Dan McAnulty. The jury, which included Gamboa, convicted Biagas of felony theft. Biagas retained a new attorney and timely filed a motion for new trial, arguing that (1) he was denied the opportunity to replace a biased juror and (2) he was denied effective assistance of counsel when McKamie failed properly to challenge Gamboa. In support of his motion, Biagas presented the affidavit of McKamie, who admitted that he mistakenly believed that Gamboa was on the agreed for-cause strike list and that he would have challenged Gamboa but for that mistake. The trial court denied Biagas's motion without an opinion, and the Texas Court of Appeals affirmed his conviction. In rejecting Biagas's claim of judicial error, the appellate court noted that (1) the trial court was within its discretion to deny Biagas's request for a mistrial, and (2) Biagas's failure to challenge Gamboa for cause deprived the trial court of an opportunity to assess whether he was "unequivocally biased."[3] And, in rejecting Biagas's ineffective assistance claim, the appellate court concluded that the trial court could have found that McKamie's affidavit was not credible and thereby rejected McKamie's contention

---

[2] Gamboa's juror number was "38." Counsel and the court referred to him by this designated number during their exchanges detailed above; however, for purposes of clarity in this opinion, we have identified him by his name and not his number.

[3] Biagas v. Texas, 177 S.W.3d 161, 169 (Tex. App.–Houston 2005).

that he made a mistake.[4] Moreover, the appellate court refused to concede that Biagas was automatically harmed by Gamboa's presence on the jury.[5] Following the affirmation of his conviction, Biagas's petition for discretionary review was denied by the Texas Court of Criminal Appeals.

Having exhausted his recourse in state court, Biagas filed a federal petition for a writ of habeas corpus, asserting that his Sixth Amendment right to effective assistance of counsel had been violated. The district court agreed that Biagas was denied effective assistance of counsel and held that the state court decision upholding his conviction could not be sustained. In addition, the district court concluded that the trial judge had failed to "ferret out" the taint of juror bias without reasonable justification and that such failure amounted to constitutional error entitling Biagas to habeas relief. The district court granted Biagas's petition on these two grounds and directed the State of Texas to grant him a new trial or release him. Valentine timely filed a notice of appeal.

## II. ANALYSIS

### A. Standard of Review

As this action was brought under 28 U.S.C. § 2254, our review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").[5] Under the AEDPA, we cannot grant habeas relief "unless the state court proceeding resulted in 'a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court.'"[6] "A merely incorrect state court decision is not sufficient

---

[4] Id. at 171.

[5] Id. at 172.

[5] Virgil v. Dretke, 446 F.3d 598, 604 (5th Cir. 2006).

[6] Id. (quoting 28 U.S.C. § 2254(d)(1)).

to constitute an unreasonable application of federal law; rather, the decision must be objectively unreasonable."[7]

## B.    Right to an Impartial Jury

"Our criminal justice system rests firmly on the proposition that before a person's liberty can be deprived, guilt must be found, beyond a reasonable doubt, by an impartial decisionmaker.  The Sixth Amendment provides in part: 'In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed.'"[8] "Put simply, '[T]he right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, "indifferent" jurors.'"[9] Moreover, we are "mindful that certain errors in the trial process are so basic to a fair trial as to defy harmless error review.  It is clearly established that the Supreme Court views the denial of the right to an impartial decisionmaker to be such an error that taints any resulting conviction with constitutional infirmity."[10]

## C.    Effective Assistance of Counsel

The district court held that Biagas was denied effective assistance of counsel because of McKamie's failure to challenge Gamboa either peremptorily or for cause.  In reaching its decision, the district court concluded that Virgil v. Dretke[11] controlled its analysis.  Valentine argues that Biagas fails to meet

---

[7] Id. (citing Morrow v. Dretke, 367 F.3d 309, 313 (5th Cir. 2004); Young v. Dretke, 356 F.3d 616, 623 (5th Cir. 2004)).

[8] Id. at 605 (quoting U.S. CONST. amend. VI).

[9] Id. (quoting Irvin v. Dowd, 366 U.S. 717, 722 (1961)).

[10] Id. at 607 (internal quotations omitted).

[11] 446 F.3d 598.

Strickland v. Washington's[12] two-pronged test for establishing ineffective assistance of counsel, insisting, inter alia, that Biagas's defense was not prejudiced by McKamie's conduct because any alleged bias was irrelevant to the outcome and reliability of the proceedings. Moreover, in attacking the district court's decision, Valentine attempts to distinguish Virgil. We agree with the district court that Virgil controls our analysis. And, in accordance with our decision in Virgil, we hold that the district court properly granted Biagas relief on the basis of ineffective assistance of counsel.

To succeed on a charge of ineffective assistance of counsel in state court, a petitioner must satisfy both prongs of Strickland's two-part test by demonstrating that (1) counsel's performance was deficient and (2) that deficient performance caused actual prejudice to the petitioner's defense.[13] To prove deficient performance, "a petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness."[14] In evaluating counsel's performance, we apply "the strong presumption that counsel performed adequately and exercised reasonable professional judgment."[15] "[A] 'conscious and informed decision on trial tactics and strategy cannot be the basis of constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'"[16] After establishing that counsel's performance was deficient, the petitioner must also prove that such performance caused actual prejudice to his defense. To demonstrate prejudice, a petitioner "must show that there is a reasonable

---

[12] 466 U.S. 668 (1984).

[13] Id. at 687.

[14] Virgil, 446 F.3d at 608 (internal quotations omitted).

[15] Id. (quoting Titsworth v. Dretke, 401 F.3d 301, 310 (5th Cir. 2005)).

[16] Id. (quoting Johnson v. Dretke, 394 F.3d 332, 337 (5th Cir. 2004)).

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."[17] Moreover, "Strickland's prejudice inquiry is process-based: Given counsel's deficient performance, do we have confidence in the process afforded the criminally accused?"[18] "'[T]he ultimate focus of the inquiry must be on the fundamental fairness of the proceeding whose result is being challenged.' We focus on ferreting out 'unreliable' results caused by 'a breakdown in the adversarial process that our system counts on to produce just results.'"[19]

In Virgil, the defendant was convicted by a jury that included two jurors, Roger Sumlin and Thomas Sims, who had expressly stated that they would be unable to be fair and impartial.[20] We held that counsel's failure to challenge for cause or peremptorily after Sumlin and Sims had offered unchallenged statements of bias constituted deficient performance under Strickland.[21] In reaching this conclusion, we observed that defense counsel's affidavit—which he submitted in an effort to justify his conduct and decisionmaking during voir dire—did not explain why he failed to challenge the two jurors for cause or why

---

[17] Id. at 611 (quoting Strickland v. Washington, 466 U.S. 668, 694 (1984)).

[18] Id. at 612.

[19] Id. (quoting Strickland, 466 U.S. at 696).

[20] Id. at 609-10. Both jurors declared that they were less likely to believe a witness with a prior criminal conviction, which the defendant had. In addition, Sumlin "stated that his relationship with law-enforcement officers would preclude him from serving as an impartial juror." Id. at 609. Sims also remarked that "his mother's mugging was 'weighing' on him as to whether he could be partial or impartial, finally concluding that he could not be 'fair and impartial.'" Id. at 609-10.

[21] Id. at 610.

he allowed them to serve on the jury, given their express bias.[22] We also noted that defense counsel had challenged two other prospective jurors who had offered similar testimony to Sumlin and that neither the State nor defense counsel had expressed any reason why the other two jurors should be struck while Sumlin should not.[23] Given these inconsistencies, we concluded that the affidavit lacked "any suggestion of a trial strategy for not using peremptory or for-cause challenges on Sumlin and Sims."[24]

Here, the juror in question, Gamboa, stated during voir dire that he was biased in essentially the same manner as had the jurors in Virgil. Specifically, Gamboa stated that he was "going to be partial" and that he would believe the testimony of a law enforcement officer over that offered by Biagas. Despite this admission, McKamie, like defense counsel in Virgil, failed to challenge Gamboa for cause or use a peremptory challenge to keep him off of the jury.[25] Rather than attempt to justify his failure to challenge Gamboa—as did defense counsel in Virgil—McKamie admitted in his affidavit that his actions were the result of an oversight and not the product of strategic decisionmaking; an admission that was contrary to his own interests and was not contradicted by the State. Moreover, the record supports McKamie's contention that his failure to challenge Gamboa was a mistake of omission rather than a calculated choice. As soon as the jurors were announced, McKamie objected to the trial judge and moved for a mistrial. We have recognized the distinction between strategic judgment calls

---

[22] Id. In his affidavit, defense counsel stated that he "struck all persons whom [he] thought had some type of bias, prejudice or issue based upon [his voir dire]." Id.

[23] Id.

[24] Id.

[25] Whether McKamie used all of his peremptory challenges on other venirepersons is of no consequence to us. Given the record on appeal and McKamie's own admission (evident from his affidavit and in-court statements), the fact remains that he could have—and should have—used one of his ten strikes on Gamboa.

and plain omissions,[26] and we have emphasized that we are "not required to condone unreasonable decisions parading under the umbrella of strategy, or to fabricate tactical decisions on behalf of counsel when it appears on the face of the record that counsel made no strategic decision at all."[27] Accordingly, we conclude that the state appellate court's speculation that the trial court could have concluded that McKamie made a tactical decision not to challenge Gamboa is not supported—and, in fact, is contradicted—by the record. Therefore, in accordance with our precedent in Virgil, as well as with counsel's own admission, we conclude that McKamie's performance was deficient and hold that the state court decision to the contrary was unreasonable.

Furthermore, we conclude that Biagas was prejudiced by McKamie's deficient performance. We observed in Virgil that allowing Sumlin and Sims—who expressly stated that they were unable to be fair and impartial—to sit on the jury violated the law's mandate that a juror be "willing to 'lay aside his impression or opinion and render a verdict based on the evidence presented in court.'"[28] And, given the importance of an impartial jury, we deemed the outcome of Virgil's trial to be "unreliable because of a breakdown in the adversarial process that our system counts on to produce just results."[29] Accordingly, we held that Virgil's defense was prejudiced and that the state court decision to the contrary could not stand.

Valentine attempts to distinguish Virgil (and the district court's finding of prejudice) by asserting that Gamboa's bias differed from that of Sumlin and Sims. Valentine takes the position that Sumlin and Sims were biased against

---

[26] See Lloyd v. Whitley, 977 F.2d 149, 158 (5th Cir. 1992).

[27] Moore v. Johnson, 194 F.3d 586, 604 (5th Cir. 1999).

[28] Virgil, 446 F.3d at 613 (quoting Irvin v. Dowd, 366 U.S. 717, 723 (1961)).

[29] Id. at 613 (quoting Strickland v. Washington, 466 U.S. 668, 696 (1984)).

the defendant, as each stated that they were less likely to believe a person with a prior criminal conviction. In contrast, she maintains that Gamboa is biased, not against Biagas, but in favor of law enforcement testimony. In addition, she contends that Gamboa's alleged bias had no influence on the outcome of the trial because the jury was never called on to assess the credibility of the officers' testimony. Valentine's effort to distinguish Gamboa's bias from that of the jurors in Virgil is without merit under the circumstances: regardless whether a juror favors one witness or disfavors another, the fact remains that the juror is partial. Moreover, as jurors may not testify about their deliberations,[30] the effect that Gamboa's presence on the jury had on the ability of the remaining jurors to consider and evaluate the testimony and evidence will never be known. Given this uncertainty, Biagas's conviction is unworthy of confidence and, as such, constitutes a failure in the adversarial process. "'The jury box is a holy place.' Our criminal justice system is predicated on the notion that those accused of criminal offenses are innocent until proven guilty and are entitled to a jury of persons willing and able to consider fairly the evidence presented in order to reach a determination of guilt or innocence."[31] Biagas was deprived of such a jury and thereby prejudiced by Gamboa's presence. The state court decision rejecting his claim of ineffective assistance of counsel was an unreasonable application of clearly established federal law.

## III. CONCLUSION

In allegiance to our decision in Virgil v. Dretke, we hold that Biagas was denied effective assistance of counsel. The district court's grant of habeas corpus

---

[30] See TEX. R. EVID. 606(b) ("[A] juror may not testify as to any matter or statement occurring during the jury's deliberations, or to the effect of anything on any juror's mind or emotions or mental processes, as influencing any juror's assent to or dissent from the verdict or indictment.").

[31] Virgil, 446 F.3d at 613 (quoting United States v. Nell, 526 F.2d 1223, 1229 (5th Cir. 1976)).

relief is affirmed on this basis.  We do not reach the district court's alternative basis for granting relief and, accordingly, we do not assess the propriety of the district court's sua sponte recognition of judicial error.

AFFIRMED.