# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 14, 2011

Lyle W. Cayce
Clerk

No. 09-20665

JARED LLOYD SHANKLIN,

Petitioner - Appellant

v.

RICK THALER, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent - Appellee

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No.: 4:08-cv-01111

---

Before REAVLEY, JOLLY, and STEWART, Circuit Judges.

PER CURIAM:[*]

Before the court is Petitioner-Appellant Jared Lloyd Shanklin's ("Shanklin") appeal of the district court's denial of habeas relief, brought pursuant to 28 U.S.C. § 2254. Finding no basis to grant relief, we AFFIRM.

**I.**

On November 19, 2002, Michael Gaddis ("Gaddis") was shot and killed following an altercation in Houston, Texas. The ensuing police investigation led

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

to Shanklin's arrest.  Testimony adduced at trial painted the following picture of what transpired on that night.

Shanklin went to Carrington's, a night club and pool hall, with his brother, John Shanklin, and his friend, Darrell Willis.  *Shanklin v. State*, 190 S.W.3d 154, 158 (Tex. Ct. App. 2005).  While in the club, Shanklin, Gaddis, and others got into an altercation.  *Id.* at 170.  As the club was closing and people were exiting, the group continued their argument in the parking lot, which ultimately graduated to a physical altercation.  *Id.*  A full beer bottle was thrown at Shanklin, hitting him in the leg.  Three people, including Gaddis, jumped on Willis and began beating him.  John testified that he did not intervene because he feared for his life.

There was also testimony that Gaddis's friends got him away from the fight and into a truck, but subsequently Gaddis got out of the truck, rushed towards Shanklin, and continued arguing with Shanklin until Shanklin shot him. *Id.*  Another witness testified that Shanklin retrieved a gun from his truck and came back shooting at the crowd as Gaddis's friends tried to get Gaddis to leave.  Many shots were fired, and Gaddis was shot twice at close range, once in the side of the face and once in the abdomen.  Shanklin asserted self-defense and defense of a third person.

Shanklin testified that he fired his firearm and "shot in that direction" because "once the bottle was thrown and they were swinging at [Willis, he] didn't know what was next."  He did not see anyone in Gaddis's group with a weapon.

With regard to the need for deadly force, Shanklin testified that he:

> knew [he] couldn't go over there and physically fight with him
> [because of leg problems].  So [he] felt like the only thing [he] could
> do is shoot in that direction and scatter everything and just calm it
> down so [he] could give [Willis] the chance to get away from all that.

*Id.* at 159–60. Shanklin further testified that while Gaddis was hitting his friend, Willis, he shot in the group's direction.  Shanklin stated that he shot

No. 09-20665

while he was getting up from the ground and that he was not sure whether he shot "high or low." Shanklin replied "No" when he was asked, "you weren't shooting at anybody, were you?" Shanklin agreed that he was just shooting into the crowd blindly. Shanklin did not immediately realize that he had shot anyone, let alone Gaddis. *Id.* at 160.

A witness, Troy Parker, arrived at Carrington's near closing time and saw a "group of people" arguing outside the club. Parker testified that people were "trying to keep [Gaddis] inside the truck," but also that he did not see Gaddis with a weapon. Parker saw Shanklin shoot Gaddis from a distance of one or two feet. He did not see anyone fighting or throwing punches before Shanklin shot Gaddis. He did not see anyone throw a bottle at Shanklin.

Richard Carter was working as a security guard at Carrington's that night. He testified he did not see any weapons during the argument, anyone throw a bottle during the argument, nor anyone engage in a physical altercation. Carter testified that when he left his post to ask for help, he heard gunfire. Carter turned and saw Gaddis "going down," and Shanklin running away with a gun. Shanklin was about "five feet or less" from the victim when Carter turned. Carter was fifteen or twenty yards from Shanklin.

Gabino Garcia, another security guard, estimated that seven people including Gaddis were involved in the argument. Garcia testified that after the bottle was thrown, Shanklin retrieved a bag from a car, pulled a gun out of the bag, and walked over to Gaddis and started shooting. Shanklin was pointing his weapon "level ways . . . .where you could hit a person" not in the air. Garcia testified that he did not see anyone fighting before the shooting and that he did not see any weapons before the shooting.

The medical examiner testified that Gaddis was shot once in the stomach and once in the head, the latter of which was fatal. A fired cartridge was

3

No. 09-20665

recovered seventeen feet from Gaddis's body.  At the close of evidence, the trial court charged the jury as to murder, self-defense, and defense of third persons.

The jury was instructed that it could "consider all relevant facts and circumstances surrounding the death . . . going to show the condition of the mind of the accused at the time of the offense."   The jury was also instructed that it was required to find Shanklin not guilty if it determined that he shot Gaddis in defense of John, Willis, or himself.   The jury convicted Shanklin of murder and the trial court sentenced Shanklin to 60 years in prison.  *Id*. at 157.

Shanklin thereafter filed a motion for a new trial with the assistance of his new attorney, Brian Wice.  Shanklin alleged that his trial counsel, Lee Richardson, rendered ineffective assistance when, among other things, he failed to request jury instructions on the lesser-included offenses of manslaughter and aggravated assault.  *Id*.

The trial court conducted the motion for a new trial hearing only by affidavits.  *Id*. at 158.  Shanklin stated in his affidavit that he told Richardson that he never intended to kill anyone when he fired into the crowd and that he expected Richardson to examine him regarding his intent during the trial, but that Richardson did not.  Shanklin further stated that had he known that he was entitled to a jury instruction for manslaughter or aggravated assault, he would have requested they be given.  *Id*.  Richardson admitted in his affidavit that he failed to elicit Shanklin's testimony regarding intent and that he failed to request instructions on manslaughter or aggravated assault.  Richardson stated that his failures were not the result of any reasoned trial strategy.

The prosecutor, Paula Hartman, stated in her affidavit that she believed Richardson was "not being candid with the court in his admissions to 'alleged' ineffective assistance."   In her view, "it was sound trial strategy on [Richardson's] part not to request the lesser offenses" since he had requested and

No. 09-20665

received charges on self-defense and defense of others. *Id.* Hartman suggested that the trial court view Richardson's affidavit with a "degree of suspicion."

A trial judge who had not presided over the trial conducted the affidavits-only hearing. Shanklin argued the merits of his motion and objected to Hartman's affidavit as lacking foundation. The State argued that Richardson's affidavit was not credible. After hearing the arguments, the judge overruled Shanklin's motion for a new trial.

Shanklin, still represented by Wice, appealed his conviction and sentence arguing, among other things, that Richardson rendered ineffective assistance when he failed to request jury instructions on manslaughter and aggravated assault. *Shanklin*, 190 S.W.3d at 158, 163. The appellate court held that Shanklin was entitled to an instruction on the lesser-included offense of manslaughter, finding that the evidence, construed in the light most favorable to Shanklin, showed that Shanklin "did not intend to kill [Gaddis], but merely to scatter the group of men who were hitting his friend." *Id.* at 160. The panel split, however, on the issue of whether Richardson rendered ineffective assistance when he failed to request the instruction.

The majority, in applying *Strickland v. Washington*, 466 U.S. 668 (1984), held that although Shanklin was entitled to the manslaughter instruction, Richardson did not perform deficiently in failing to request it. *Id.* at 160–61. The court stated that although Richardson indicated in his affidavit that his failure to request the instruction was not the result of any reasoned trial strategy, Richardson failed to explain why he chose not to ask for the instructions. *Id.* The court explained that it would "assume a strategic motive if any can be imagined" and agreed with the State that Richardson "may have decided not to ask for the lesser included offense because he did not want the jury to consider inconsistent defenses—defense of a third person and manslaughter—each of which requires a different mens rea." *Id.* at 160–61. The

5

majority also speculated that Richardson could have been "pursuing an all-or-nothing strategy" and concluded that Richardson would not have been deficient if he was pursuing such a strategy because "the facts were more consistent with an intentional killing in defense of self and others." *Id*. at 161 (internal citations and quotation marks omitted).  Finally, the court noted that the district court was permitted to "view defense counsel's affidavit with skepticism because it was not supported by any offer of live testimony, subject to cross-examination." *Id*.  The appellate court thus rejected Shanklin's claim that Richardson rendered ineffective assistance when he failed to request the manslaughter instruction.  *Id*. The court also rejected Shanklin's ineffective assistance claim as to the aggravated assault instruction.  *Id*. at 161–62.

A dissenting opinion reasoned that it would have been unreasonable for Richardson to pursue an all-or-nothing strategy, if he even had been (as the majority concluded).  *Id*. at 169–71.  The dissent further concluded that Richardson's failure to request a manslaughter instruction deprived Shanklin of the chance to be convicted on a lesser charge that was supported by the testimony of several witnesses, that was otherwise supported by the record, and that would have established a lesser degree of culpability which carried with it a lesser sentence than murder.  *Id*. at 171.  Shanklin filed a petition for discretionary review (PDR) with the Texas Court of Criminal Appeals (TCCA). The TCCA initially granted Shanklin's PDR, but ultimately concluded that its "decision to grant appellant's petition was improvident" and dismissed Shanklin's PDR.

Shanklin, still represented by Wice, then filed a petition for habeas relief, pursuant to 28 U.S.C. § 2254 in the Southern District of Texas asserting only that Richardson rendered ineffective assistance when he failed to request a manslaughter instruction.  Shanklin relied heavily on Richardson's affidavit,

6

arguing that it "rebutted the presumption that his trial counsel's inaction was a reasonable trial strategy" and established deficient performance.

The district court granted summary judgment to the State. With respect to deficient performance, the district court considered Shanklin's reliance on *Biagas v. Valentine*, 265 F. App'x 166, 170–73 (5th Cir. 2008), misplaced because in the instant case, Richardson's affidavit was vigorously disputed by the State and contradicted by the record which "show[ed] that trial counsel's failure to ask for a lesser-included-offense instruction was consistent with an overall strategy of showing that Shanklin acted in self-defense or in defense of a third party, Willis." The district court ruled that the appellate court's finding regarding deficient performance was not an unreasonable finding of fact or an unreasonable application of the law.

With respect to prejudice, an issue which the district court analyzed de novo, the district court compared the evidence supporting Shanklin's murder conviction with the evidence that could have supported a manslaughter conviction. The district court concluded that there was not "a reasonable probability that, had the instruction been given, the jury would have found Shanklin guilty of the lesser included offense." The district court denied Shanklin a certificate of appealability ("COA"). Shanklin timely appealed to this court. This court granted a COA "as to whether the state court's decision that Shanklin's trial attorney did not render ineffective assistance when he failed to request a jury instruction on the lesser-included offense of manslaughter" was contrary to or an unreasonable application of *Strickland* or was based on an unreasonable determination of the facts in light of the evidence.

## II.

Shanklin argues that the district court erred in denying his *Strickland*-based § 2254 application. Specifically, Shanklin argues that the state court majority's speculation that counsel could have had a tactical reason for not

seeking the manslaughter instruction is not supported by, and is contradicted, not only by counsel's sworn admission against interest, but also by Supreme Court and Fifth Circuit precedent. The State counters that Shanklin has not demonstrated that the denial of his ineffective assistance of counsel claim was contrary to, or an unreasonable application of *Strickland*.

## A.

We review Shanklin's appeal de novo. *See Ladd v. Cockrell*, 311 F.3d 349, 357 (5th Cir. 2002) ("Because an ineffective assistance claim is a mixed question of law and fact, we review de novo.") (citing *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999)). This court applies the same deference to the state appellate court's decision as the district court must under the Anti-Terrorism and Effective Death Penalty Act (AEDPA) of 1996. *Lindh v. Murphy*, 521 U.S. 320, 324–26 (1997). Under AEDPA, habeas relief may not be granted with respect to a claim that was adjudicated on the merits in state court, unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding," *id.* at § 2254(d)(2).

Section 2254(d)(1) applies to questions of law as well as mixed questions of law and fact. *Penry v. Johnson*, 532 U.S. 782, 792 (2001). A state court's decision is contrary to the Supreme Court's clearly established precedent if the state court either "applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "confronts a set of facts that are materially indistinguishable from a decision of the [Supreme Court] and nevertheless arrives at a [different result.]" *Id.* (citations omitted). A state court's decision is an unreasonable application of the Supreme Court's clearly established

precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* (citations omitted).

Section 2254(d)(2) applies to the state court's overall determination of the relevant facts. *Fields v. Thaler*, 588 F.3d 270, 279 (5th Cir. 2009). A state court's discrete factual findings are presumed to be correct, but a petitioner may rebut the presumption with clear and convincing evidence. *Id.*; 28 U.S.C. § 2254 (e)(1).[1] This court independently applies the law to the facts found by the district court, as long as the district court's factual determinations are not clearly erroneous. *Richards v. Quarterman*, 566 F.3d 553, 561 (5th Cir. 2009).

**B.**

The "clearly established federal law" applicable to Shanklin's claim is the two-prong ineffective assistance test established in *Strickland*. 466 U. S. at 687 To prevail on an ineffective assistance claim, a defendant must show: (1) "that counsel's performance was deficient" and (2) "that the deficient performance prejudiced the defense." *Id.*

The deficiency prong requires a defendant to show that his "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Courts, however, indulge a "strong presumption" that counsel's actions "might be considered sound trial strategy." *Id.* at 689. On the other hand, this court is "not required to . . . fabricate tactical decisions on behalf of counsel when it appears on the face of the record that counsel made no strategic decision at all." *Moore v. Johnson*, 194 F.3d 586, 604 (5th Cir. 1999); *see also Richards*, 566 F.3d at 564. The prejudice prong requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional

---

[1] *Cf. Wood v. Allen*, 130 S. Ct. 847, 849 (2010) (declining to decide whether § 2254 (e)(1)'s presumption of correctness and clear and convincing standard of proof govern every challenge to a state court's factual determination, or only those challenges that are based on evidence that was not presented to the state court).

errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

## C.

### 1.

As support for his petition, Shanklin relies heavily on this court's unpublished decision in *Biagas.* 265 F. App'x at 170–73. In *Biagas*, this court affirmed a grant of habeas relief due to voir dire error by the petitioner's original trial counsel. The trial counsel in that case, Reginald McKamie, failed to dismiss a juror who was a sheriff's deputy from the same county which was a victim of the criminal scheme in which Biagas was implicated. The "questionable juror," Victor Gamboa, was not a name of a juror whom the parties stipulated should be stricken for cause, nor was he scrutinized further in chambers, as were certain other prospective jurors. When McKamie noticed that Gamboa had been seated, the trial court did not dismiss the juror, despite McKamie's tardy objections. *Id.* The jury, which included Gamboa, convicted Biagas. *Id.*

After exhausting his avenues in state court, Biagas was successful in his § 2254 petition. Biagas argued that his Sixth Amendment right to effective counsel was violated. The district court agreed, ruling that the "trial court had failed to ferret out the taint of juror bias." *Id.* (internal citation and quotation marks omitted). This court affirmed and found persuasive McKamie's uncontested admission that "his failure to challenge Gamboa was a mistake of omission rather than a calculated choice." *Id.* at 171.

Shanklin argues that *Biagas* supports the proposition that if trial counsel acknowledges that his tactics lacked a reasoned trial strategy, then a petitioner is entitled to habeas relief. Shanklin further argues that Richardson's deficient performance prejudiced his defense, asserting that "the jury was not given the

opportunity to evaluate the evidence as it relates to the lesser offense, which . . . calls into question the integrity of the jury's decision making process."

Yet, as the State argued and the district court presciently held, Shanklin's reliance on *Biagas* is misplaced. First, Richardson's affidavit was vigorously disputed by the State and contradicted by the record, which "show[ed] that trial counsel's failure to ask for a lesser-included-offense instruction was consistent with an overall strategy of showing that Shanklin acted in self-defense or in defense of [others]." The district court therefore correctly ruled that the appellate court's finding regarding deficient performance was not an unreasonable finding of fact or an unreasonable application of law.

Moreover, as the State points out, the state habeas court was not bound by Richardson's affidavit and made a credibility choice—which must be presumed correct[2]—against trial counsel's affidavit. Shanklin avers that too much deference was afforded to the state court's decision to disregard Richardson's admission against his own interest under oath. Shanklin argues that because Richardson's admission was contrary to his own interest, this case is congruent to *Biagas.* But as the State suggests, it was entirely reasonable for the state court to conclude that Richardson's trial counsel did not request a lesser offense instruction because that would have been incompatible with his defense strategy at trial, i.e., that Shanklin was acting out of self-defense, and the different mens rea attendant to the alternating charges.

Shanklin's next argument for relief is under *Richards.* 566 F.3d 553. In *Richards*, this court found deficient performance in trial counsel's failure to present crucial exculpatory evidence, request a lesser-included offense

---

[2] The state cites to *Self v. Collins*, 973 F.2d 1178 (5th Cir. 1992). This court's opinion in *Self* is grounded in principles of federalism and reiterates that state findings are presumptively correct unless they are not fairly supported by the record" or the petitioner proves them erroneous by convincing evidence. *Id.* at 1204.

instruction, put petitioner's medical records into evidence, and conduct adequate pre-trial investigation. *Id.* Relevant here, the court found that the aggregate of these offenses should have led Richards's counsel, Jill Davis, to request a lesser-included offense instruction and Davis's failure to do so was deficient and not a strategic decision. *Id.* at 569. In *Richards*, the jury convicted defendant Richards and the trial court sentenced him to 25 years in prison, following Richards's refusal of a plea offer that would have yielded a five-year prison term. *Id.* at 558.

Shanklin's reliance on *Richards* is equally misplaced. First, *Richards* is distinguishable because in that case, trial counsel argued that the failure to offer a lesser instruction was a strategic decision. The record here supports a choice to pursue self-defense as a theory of the case. Moreover, the record in *Richards* was more favorable to a jury returning a verdict of acquittal than is the case here. In fact, as the State points out, the jury in this case considered (and rejected) a theory of self-defense implicitly in its conviction.

*Richards* works both ways. In *Richards*, this court held that a state court's finding that trial counsel employed a two-bites-at-the-apple strategy lacked even fair support in the record. *See generally id.* at 557. The record here suggests that counsel for Shanklin is doing just that. Nonetheless, Richardson's potential error was not so grievous as to render his performance to Shanklin deficient. As we have held before, "in a non capital case, the failure to give an instruction on a lesser-included offense does not raise a constitutional issue." *Creel v. Johnson*, 162 F.3d 385, 390 (5th Cir. 1998) (citations omitted). Thus, the district court did not err when it found that Shanklin's trial counsel's performance was not deficient.

**2.**

Not only has Shanklin failed to establish Richardson rendered deficient performance, he also cannot establish prejudice, which he is required to do.

No. 09-20665

*Strickland'*s prejudice inquiry is process based: given deficient performance (which we assume for the sake of argument), "do we have confidence in the process afforded the criminally accused." *Virgil v. Dretke*, 466 F.3d 604, 612 (5th Cir. 2006).   As stated above, the prejudice prong requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Here, we cannot say that Shanklin has shown that there is a reasonable probability that the result of the proceeding would have been different. Shanklin has not articulated why the result would have been different—he just conclusively asserts that it would have been.  The jury here affirmatively found a higher mens rea requirement necessary to convict for murder than for a conviction for manslaughter.  Moreover, the trial did not establish evidence for the charge as Shanklin's defense was premised on one theory, one that was rejected.  Put simply, there is not enough in the record to support Shanklin's assertion that the failure of counsel to include a lesser charge in the jury instruction was sufficient to undermine confidence in the outcome, and deem his assistance of counsel ineffective.  It merely suggests Shanklin's attempt to get a second bite at the apple when the record does not support the instruction.

Moreover, *Strickland* requires Shanklin to *affirmatively* prove he has suffered prejudice. 466 U.S. at 693.  He has not done so. At best, his averments of prejudice amount to nothing more than conjecture. Shanklin's habeas petition ponders what could have been—that a jury which was reticent to convict on the more serious charge of murder could have a buffet of choices and convict on the less-serious manslaughter charge, while still apportioning guilt for Shanklin's culpability in Gaddis's death.  Thus, we agree with the district court's analysis on this prong of the *Strickland* analysis.

13

No. 09-20665

**3.**

We find additional support for our conclusion in a recent decision of the Supreme Court concerning the deference we owe to state courts in § 2254 cases. *Harrington v. Richter*, 131 S.Ct. 770 (2011). In *Harrington*, the Supreme Court reversed the Ninth Circuit's grant of habeas relief under § 2254 and framed the issue in the following way: "The pivotal question [in a § 2254 petition] is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Id.* at 785. The Court continued, "it is a necessary premise that the two questions are different . . . an *unreasonable* application is different from an *incorrect* application of federal law." *Id.* at 783 (emphasis in original).

The Court explained that federal courts owe great deference to state courts in their ability to handle and consider habeas cases born in their criminal justice system. Federal courts, *Harrington* instructs, should not so readily hold that state courts err in their *Strickland* analyses. In these cases, de novo review of the attorney's conduct is not warranted, nor is it the law. "If this standard is difficult to meet, that is because it was meant to be . . . § 2254 stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Id.* at 786. The Court continued, "§ 2254 preserves authority to issue the writ in cases where there is no possibility that fairminded jurists could disagree that the state court's decision conflicts with th[e Supreme Court]'s precedents." *Id.* The Court noted further, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786–87. Here, Shanklin has not made such a showing.

No. 09-20665

In dismissing the defendant's complaints that his counsel erred in not pursuing certain experts, the Supreme Court in *Harrington* counseled that "[r]epresentation is constitutionally ineffective only if it so undermined the proper functioning of the adversarial process that the defendant was denied a fair trial . . . just as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what may appear to be remote possibilities." *Id.* at 791 (internal citation and quotations omitted)

*Harrington* makes more difficult Shanklin's efforts at habeas relief here. The Supreme Court instructs lower federal courts that "state proceedings are the central process, and not just a preliminary step for a later federal habeas proceeding." Because the question in this proceeding is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard, Shanklin's petition fails.

The central tension in this case is whether Shanklin's counsel rendered ineffective assistance of counsel by failing to ask for a lesser instruction when the case was submitted to the jury. It appears that this argument is the type the Supreme Court contemplated when it counseled that "[r]eliance on the harsh light of hindsight to cast doubt on a trial that took place [ . . . eight] years ago is precisely what *Strickland* and AEDPA seek to prevent." *Id.* at 789 (internal citations and quotations omitted).

Here, the record reveals that Shanklin's counsel made the strategic decision to pursue a self-defense strategy. A review of the witnesses and the nature of their testimony evinces an attempt by Richardson to narrate an explanation that Shanklin fired a weapon into a crowd to either disperse it, or prevent injury to himself or others. This conclusion is buttressed by the fact that the mens rea for self-defense is different than for manslaughter, thereby further undermining the conclusion that Richardson's performance was deficient.

No. 09-20665

As the Supreme Court explained in *Harrington*, the likelihood of a different result as a consequence of Shanklin's counsel's deficient performance "must be substantial, not just conceivable." *Id.* at 792. Here, given the deference this court owes to the state court's application of *Strickland*, the record does not support a conclusion that had Shanklin's counsel offered a lesser-instruction, that there is a substantial likelihood of a different result. Moreover, fair minded jurists could disagree that the state court's decision conflicts with the Supreme Court's precedent. Thus, *Harrington* reinforces the conclusion that Shanklin was not rendered deficient performance by Richardson.

As articulated above, the burden is on Shanklin to demonstrate entitlement to habeas relief. The burden Shanklin must satisfy in order to establish entitlement to habeas relief is conjunctive: he must demonstrate deficient performance and prejudice therefrom. *Richards*, 566 F.3d at 561. The state court concluded he did not warrant habeas relief. Pursuant to AEDPA, our review compels relief only if we conclude that the state court's analysis was contrary to or an *unreasonable* application of *Strickland*. We find that because Shanklin must demonstrate deficient performance **and** prejudice therefrom, and in fact has done neither, the state court's treatment of Shanklin's ineffective assistance of counsel complaint was not contrary to, and did not involve an unreasonable application of, *Strickland*.

## III.

For the foregoing reasons, Shanklin's petition for habeas relief brought pursuant to 28 U.S.C. § 2254 is denied and the judgment of the district court is AFFIRMED.