# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 6, 2013

No. 11-20606

Lyle W. Cayce
Clerk

ROBERT GLEN DAVIS,

Petitioner–Appellant

v.

RICK THALER, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent–Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:10-CV-3788

Before REAVLEY, PRADO, and ELROD, Circuit Judges.

PER CURIAM:[*]

Petitioner–Appellant Robert Glen Davis, Texas prisoner # 1395990, was convicted of aggravated assault and sentenced to fifty years' imprisonment. After exhausting his state remedies, he filed a pro se petition for federal habeas relief under 28 U.S.C. § 2254. This Court granted a certificate of appealability on the issue of the effectiveness of Davis's trial counsel; we now AFFIRM the denial of his petition.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-20606

## I. Background

On August 26, 2005, a grand jury returned a felony indictment against Davis, charging him with aggravated assault. Specifically, Davis was charged with intentionally injuring his wife, Gwendolyn Thompson, with a deadly weapon. The State enhanced the indictment with allegations that Davis had two prior felony convictions for robbery.

A venirepanel of sixty-two people was convened for voir dire. Davis's trial counsel explained to the veniremembers:

> People have backgrounds and sometimes in a case there are people that are law enforcement that testify and people that are not law enforcement that testify. And one of those things that people can have—this is another simple bias, it's not negative, it's just the way it is. Okay—is that you would believe a police officer over a non-police officer . . . Well, our law says that you can't give a police officer any more credibility than any other witness just because they're a police officer. Okay. And I need—that's the other question that I'm asking you. . . . *Are you going to be able to consider all of the witnesses equal and not consider law enforcement testimony just because it's law enforcement testimony superior over a civilian's?*

(Emphasis added.) Counsel asked this and two other questions as he proceeded down the row of assembled veniremembers. Any time a veniremember answered "No," he would ask for clarification. After receiving a "No" from Juror Clark (#7), counsel asked which question he was referring to, and Clark answered, "I would tend to weigh a police officer's testimony a little higher than I would someone that wasn't." Juror Penn (#27) also answered "No," and then clarified, "Just on the credibility of a—not, I guess there's the discussion that bothers me about bringing someone in off the street that could have credibility like an officer or somebody." When counsel came to Juror Vela (#39), she stated, "No, I would believe a police officer first." Veniremember Jackson (#59) stated he would "tend

2

to have—give the police officer more credence than just an ordinary person." Counsel did not ask any further questions of these veniremembers. Clark and Penn were eventually empaneled on Davis's jury. Vela was originally empaneled but was removed from the jury before it rendered a verdict. Jackson was never empaneled.

At trial, the State called several witnesses, including Thompson and three law enforcement officers. Thompson testified that Davis visited her apartment late on the night of July 16, 2005. She stated that after Davis took a chef's knife from the kitchen, he began attacking her, saying he was going to kill her because she would not take him back or have sex with him. Davis stabbed Thompson repeatedly in the chest, stomach, and left arm before fleeing the apartment. The paramedics dispatched to Thompson's apartment initially did not believe she would survive because of the amount of blood she had lost. Thompson testified that the long-term effects of her injuries meant that she could no longer work as a home health care provider and had trouble digesting food.

The law enforcement officers' testimony consisted largely of descriptions of the crime scene and statements made by the victim at the time of the incident. Officer Robert Gutierrez, the crime scene investigator, identified and described a number of photographs he had taken when he arrived on the scene, including images showing blood on Thompson's door, carpet, and couch. The responding patrol officer, Officer James Crawford, stated that he remained at the crime scene for an hour and had observed blood everywhere. He said that while she was in the ambulance, Thompson had told him that her boyfriend, Robert Davis, had come into the apartment and stabbed her with a knife. Officer James Taylor, a robbery investigator, testified that after the incident he met with Thompson, who gave him a kitchen knife to collect as evidence.

Davis testified in his own defense. On direct examination, he claimed that Thompson's wounds were self-inflicted, that she was a drug addict, and that she

had attacked him with the knife first.  On cross-examination, however, he admitted that he had stabbed Thompson, though he testified that it was in self-defense.  Davis acknowledged that he had a lengthy criminal record, but denied that he had violent tendencies.

On September 21, 2006, the jury returned a guilty verdict.  Davis admitted the State's enhancement allegations were "true."  The judge then sentenced him to fifty years of imprisonment.  The state appeals court affirmed Davis's conviction, and the Texas Court of Criminal Appeals refused his petition for discretionary review.  *See Davis v. State*, 259 S.W.3d 778, 780 (Tex. App.—Houston[1st Dist.] 2007, pet. ref'd).  Davis subsequently sought state habeas relief in the trial court that presided over his trial.  That court submitted written findings recommending that relief be denied.  *See Ex parte Davis*, No. 1034652-A (208th Dist. Ct., Harris County, Tex. May 17, 2010).  Davis appealed to the Texas Court of Criminal Appeals, which adopted the trial court's findings and denied relief without written order.  *See Ex parte Davis*, No. WR-73,665-02 (Tex. Crim. App. July 14, 2010).

Davis then filed this 28 U.S.C. § 2254 petition in the United States District Court for the Southern District of Texas.  The petition argued that (1) there was insufficient evidence to support Davis's conviction, (2) the trial court erred in denying his *Theus* motion to prohibit the State from impeaching his testimony using his prior convictions, and (3) his trial counsel was ineffective.  The district court determined that his sufficiency of the evidence claim was procedurally barred and his two other claims lacked merit.  It also denied *sua sponte* a certificate of appealability (COA).  Davis timely appealed, and a judge of this Court granted a COA on the sole issue of whether "his trial counsel was ineffective in that he failed to raise for-cause or peremptory challenges against jurors who indicated a predisposition to credit police officer testimony over other witness testimony."

No. 11-20606

## II. Discussion

In reviewing a denial of the writ of habeas corpus, this Court reviews the district court's findings of fact for clear error and its conclusions of law de novo. *Guy v. Cockrell*, 343 F.3d 348, 351 (5th Cir. 2003).

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") governs a federal habeas court's review of a state court's adjudication of the merits of a state prisoner's claims. 28 U.S.C. § 2254(d). "AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) (citations and internal quotation marks omitted). With respect to claims of ineffective assistance of counsel, a federal court may not grant habeas relief unless the state court's denial "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see also Valdez v. Cockrell*, 274 F.3d 941, 946 (5th Cir. 2001) ("We review questions of law and mixed questions of law and fact under the 'contrary to' and 'unreasonable application' prong of 28 U.S.C. § 2254(d)."); *Strickland v. Washington*, 466 U.S. 668, 698 (1984) (questions about the effectiveness of counsel are mixed questions of law and fact).

When, as here, the state court decision applied the correct legal rule to the facts of the case, the decision is reviewed under the "unreasonable application" clause. *See (Terry) Williams v. Taylor*, 529 U.S. 362, 406 (2000). A state court unreasonably applies Supreme Court precedent if it "identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts," or if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *(Terry) Williams*, 529 U.S. at 407. To satisfy the "unreasonable application" prong of § 2254(d)(1),

5

a petitioner must show that "there was no reasonable basis" for the state court's decision. *Harrington v. Richter*, 131 S. Ct. 770, 784 (2011); *see also Cullen v. Pinholster*, 131 S. Ct. 1388, 1402 (2011) (in reviewing a state court's decision on the merits, "a habeas court must determine what arguments or theories . . . could have supporte[d] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court").

The relevant "federal law as determined by the Supreme Court" in this case is the standard for ineffective assistance of counsel claims set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on a claim of ineffective assistance of counsel under *Strickland*, a petitioner must show (1) that counsel's performance was deficient, and (2) that this prejudiced the petitioner's defense. *Strickland*, 466 U.S. at 687; *see Virgil v. Dretke*, 446 F.3d 598, 608 (5th Cir. 2006).

Thus, Davis must meet three separate burdens: he must show that his counsel's performance was deficient, he must establish that counsel's deficient performance prejudiced his defense, and, finally, he must demonstrate there was "no reasonable basis" for the state habeas court's decision to the contrary. *See Schaetzle v. Cockrell*, 343 F.3d 440, 444 (5th Cir. 2003). We conclude that Davis has not met the first, much less all three, of these burdens.

To satisfy *Strickland*'s "deficient performance" prong, the petitioner "must demonstrate that counsel's representation 'fell below an objective standard of reasonableness.'" *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 446 U.S. at 688). A reviewing court must give great deference to counsel's performance, applying a strong presumption "that [he] rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992).

No. 11-20606

Davis's ineffective assistance of counsel claim centers on the performance of his attorney during voir dire. He argues that his counsel failed to challenge for cause the jurors who indicated they would credit the testimony of a police officer over the testimony of other witnesses.[1] This failure, Davis claims, resulted in his case being decided by biased jurors,[2] depriving him of his Sixth Amendment right to an impartial jury.

Davis suggests that our decision in *Virgil v. Dretke*, 446 F.3d 598, 608 (5th Cir. 2006), governs this case and entitles him to relief. Davis is correct that *Virgil* controls, but he is mistaken in claiming that it dictates an outcome in his

---

[1] Under AEDPA, petitioners may not appeal the denial of habeas relief without securing a COA. 28 U.S.C. § 2253(c)(1). A COA is only warranted if the petitioner makes "a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). To make such a showing, petitioner must demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quotation marks omitted).

In his brief, Davis alleges bias on the part of multiple jurors and veniremembers other than Clark, Penn, Vela, and Jackson. But the COA in this case was granted only to review whether "trial counsel was ineffective in that he failed to raise for-cause or peremptory challenges against jurors who indicated a predisposition to credit police officer testimony over other witness testimony." Clark, Penn, Vela, and Jackson were the only unchallenged veniremembers who exhibited this disposition. Davis did not move to have the scope of the COA broadened, but because he brings this action pro se, we assume for the sake of argument that his initial brief in this appeal served as such a motion. However, because no reasonable jurist could debate that the district court was correct in its disposition of the claims regarding these other veniremembers, we decline to expand the scope of the COA to include arguments about more veniremembmers than those who indicated they would give more weight to police testimony. Claims the district court was not able to adjudicate because they were not raised are waived on appeal. *See United States v. Smith*, 915 F.2d 959, 964 (5th Cir. 1990) ("If the defendant in habeas proceedings did not raise his claims before the district court,we do not consider them on appeal.").

[2] The State asserts that Davis did not sufficiently raise challenges in the district court or state court to his counsel's questioning of certain jurors that he now argues were biased. To the extent Davis now objects to any jurors for reasons other than their stated faith in the testimony of law enforcement officials, his claims fall outside the scope of the COA granted by this Court. *See supra* note 1. To the extent the arguments the State objects to fall within the scope of the COA, we decline to address the State's waiver arguments because even if the claims were not waived, Davis is still not entitled to relief. *See infra* Discussion of prejudice.

favor.   In that case, a habeas petitioner brought an ineffective assistance of counsel claim, arguing that his attorney failed to make a for-cause or peremptory challenge to five allegedly biased jurors.  *Virgil*, 446 F.3d at 601.  Three of the jurors at issue—Saddler, Faulconer, and Jarboe—had answered "No" when counsel asked, "[W]ould you give [a defendant with a prior conviction] the same benefit of credibility as you would anybody else?"  *Id.* at 602.  Of the other two jurors at issue, Sumlin and Sims, one had indicated that he would be "prejudiced against the defendant" because of his opinions about repeat offenders, and when asked "So therefore you could not serve as an impartial juror in this case?" he answered, "I would say no."  *Id.* at 603.  The other indicated he would "be prejudiced or have an unfavorable opinion against a defendant charged with [a crime like Virgil's]," and answered "Yeah, I believe so" when asked, "Would this cause you to be a juror who could not be fair and impartial in this case?"  *Id.* at 603–04.

Regarding these last two jurors, the Court stated: "Virgil's defense was prejudiced under *Strickland* by the sitting of Sumlin and Sims, as each unequivocally expressed that they could not sit as fair and impartial jurors, and the state court's decision to the contrary cannot stand," meaning that Virgil's habeas petition would be granted.  *Id.* at 613.  However, with respect to Saddler, Faulconer, and Jarboe, the Court found that Virgil failed to meet even *Strickland*'s first prong, stating that counsel's performance in response to their testimony was "not deficient."  *Id.* at 608.  In reaching that conclusion, the Court explained:

> The reality is that the role of the juror in our government would be weakened if our system expected each juror to lack any real-world sense of who is or is not testifying truthfully, and we are not convinced that this testimony alone would give rise to a valid for-cause challenge under Texas law.  Such a limited and natural response is insufficient to raise any obligation on the

part of counsel to respond with a peremptory or for-cause challenge.

*Id.* at 609 (footnote omitted).

Davis's case bears more similarity to Virgil's claims regarding Saddler, Faulconer, and Jarboe than to the claims regarding Sims and Sumlin. Unlike Sims and Sumlin, none of the four jurors in question here ever "unequivocally expressed that they could not sit as fair and impartial jurors." Like the testimony of Saddler, Faulconer, and Jarboe, the statements Davis objects to merely reveal an inclination to give greater weight to certain testimony; they provide no indication that the jurors harbored any prejudice against the defendant or in favor of the State or the victim, or would otherwise be prevented from impartially determining Davis's guilt or innocence. *See Chavez v. Cockrell*, 310 F.3d 805, 811 (5th Cir. 2002) ("In evaluating claims of juror partiality, we must consider whether the jurors in a given case had 'such fixed opinions that they could not judge impartially the guilt of the defendant.'" (quoting *Patton v. Yount*, 467 U.S. 1025, 1035 (1984)). As with testimony indicating an unwillingness to credit the statements of a defendant with prior convictions, testimony indicating a predisposition to give undue weight to police officer statements would not likely give rise to a challenge for cause under Texas law. *See Ladd v. State*, 3 S.W.3d 547, 560 (Tex. Crim. App. 1999) (holding that a venireman was not challengeable for cause under Texas Code of Criminal Procedure Article 35.16(a)(9) after he stated that he would tend to believe policemen and doctors slightly more than others); *see also* TEX. CODE CRIM. PROC. art 35.16(a) (West 2004). In light of this, and our duty to give substantial deference to counsel's decisions, we cannot conclude that the choice to forgo a for-cause challenge to strike these four jurors constitutes deficient performance. *Cf.*

No. 11-20606

*Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite.").[3]

Though we need not reach the issue, we note in passing that Davis fails to meet *Strickland*'s second requirement as well. In order to demonstrate prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. First, because Vela and Jackson did not sit in judgment of Davis, counsel's failure to challenge their inclusion was irrelevant to the outcome of his trial. Whether Clark and Penn, who did serve as jurors, put more faith in the testimony of Officers Gutierrez, Crawford, and Taylor than that of other witnesses was largely irrelevant, since the assessment of Davis's guilt did not turn on the credibility of the law enforcement officials. Their testimony focused their observations at the crime scene and statements Thompson had made to them, which were supported by photographs and Thompson's own testimony. Davis ultimately admitted to stabbing Thompson, so the only remaining issue for the jury was whether he acted in self-defense, a question about which the officers never testified. The outcome of Davis's trial thus was not affected by the alleged errors of his attorney.

---

[3] Davis also cites an unpublished case of this Circuit, *Biagas v. Valentine*, 265 F. App'x 166 (5th Cir. 2008) (per curiam) (unpublished), to support his claims. Putting aside that this Court is not bound by *Biagas*'s conclusions, the case is factually distinguishable for a number of reasons. In that case, as here, the habeas petitioner argued that his counsel was ineffective for having failed to challenge jurors who stated they would give greater weight to police testimony. *Id.* at 167–70. The *Biagas* Court affirmed the district court's grant of his petition. *Id.* at 173. However, there, the juror at issue was a Harris County Sheriff's Deputy. *Id.* at 167. Harris County was the victim of the fraud scheme allegedly executed by Biagas, and the witnesses against him were Harris County officials. *Id.* Furthermore, the juror demonstrated more than a mere willingness to credit some witnesses' testimony over others'; he also explicitly admitted, "I'm going to be partial." *Id.* None of these additional circumstances is present in Davis's case.

No. 11-20606

Because we find that Davis cannot meet the two requirements outlined in *Strickland*, we cannot conclude that the state habeas court was unreasonable in its application of Supreme Court precedent in reaching the same result.[4]

### III. Conclusion

For the foregoing reasons, we AFFIRM the district court's denial of Davis's habeas petition.

---

[4] The state habeas court actually denied Davis's petition on the grounds that Davis had failed to state with specificity which jurors he believed counsel should have struck, on what grounds they should have been struck, or how counsel's failure to do so caused him harm. However, for purposes of reviewing the state court's adjudication of the merits under AEDPA, the path the state court takes to reach its decision is immaterial. *See Catalan v. Cockrell*, 315 F.3d 491, 493 (5th Cir. 2002) ("[W]e review only the state court's *decision*, not its reasoning or written opinion . . . ."(emphasis added)).