# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-30469

United States Court of Appeals
Fifth Circuit

**FILED**

June 8, 2016

Lyle W. Cayce
Clerk

JOSEPH THOMAS,

Petitioner - Appellant

v.

DARREL VANNOY, WARDEN, LOUISIANA STATE PENITENTIARY,

Respondent - Appellee

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:13-CV-38

Before DAVIS, JONES, and GRAVES, Circuit Judges.

EDITH H. JONES, Circuit Judge:*

A Louisiana jury convicted Joseph Thomas of second-degree murder in the shooting death of Jerron Gasper and sentenced him to life in prison at hard labor without parole. Thomas has collaterally attacked his conviction through a federal habeas corpus petition. The federal district court denied him both habeas relief and a certificate of appealability ("COA"), but we granted him a

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-30469

COA to pursue a single claim of ineffective assistance of counsel. We now affirm the district court's denial of relief.

## BACKGROUND

On the weekend after Thanksgiving in 2004, Gasper traveled to Baton Rouge from his home in New Orleans. While in Baton Rouge, he received word that his home had been burglarized. Needing transportation to return to New Orleans, Gasper stole a car from a nearby gas station.

In response, Veal contacted several friends of his to assist him in recovering his car: the petitioner in this case (Thomas), as well as Joshua Weatherspoon and Emanuel Howard. This group learned that Veal's car and Gasper were headed to New Orleans and they followed in pursuit. Thomas and the others soon located Veal's car parked on the side of IH-10. They confronted Gasper, who attempted to run away. As he fled, Thomas and Howard shot him in the back. Gasper was found dead on the side of the road by a passerby the following day.

All four were indicted for second-degree murder, but Veal and Weatherspoon pled guilty to conspiracy to commit second-degree murder. Both Veal and Weatherspoon then testified for the state at the trial of Thomas and Howard. At the beginning of their testimony, the prosecution elicited the fact that they had pled guilty to the conspiracy charge. On cross-examination, the defense questioned both about their motivations for pleading guilty and testifying. Both sides discussed the guilty pleas and the implications for Veal's and Weatherspoon's veracity in opening and closing arguments. Thomas's counsel did not request a cautionary instruction that Veal's and Weatherspoon's guilty pleas should not be used as evidence of Thomas's guilt. Thomas and Howard were convicted and sentenced to life in prison at hard labor without parole.

No. 14-30469

Thomas's conviction and sentence were affirmed on direct appeal. He petitioned for state habeas relief. The state habeas court held a hearing and denied relief in an oral ruling from the bench and a subsequent written judgment. Thomas applied for supervisory writs from the Louisiana Court of Appeal and the Louisiana Supreme Court, both of which were denied summarily. Thomas then petitioned for federal habeas relief. The district court denied him relief and denied him a COA. On Thomas's motion, this court granted him a COA as to a single claim: "[W]hether counsel was ineffective for failing to request that a cautionary jury instruction that evidence of the guilty pleas of Joshua Weatherspoon and Montreal Veal to conspiracy to commit second degree murder did not constitute evidence of Thomas's guilt."

## DISCUSSION

The federal law of habeas corpus is "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102–03, 131 S. Ct. 770, 786 (2011) (internal quotation marks omitted). To this end, under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Thomas is only entitled to habeas relief if the state court's adjudication of his ineffective assistance of counsel claim "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Under this standard, we must deny habeas relief unless the state court's ruling was "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." *Burt v. Titlow,* 134 S. Ct. 10, 16 (2013) (quoting *Harrington*, 562 U.S. at 103, 131 S. Ct. at 786–87). A state court's application of federal law may be reasonable under § 2254(d)(1) even though another court has applied or would

3

have applied the same law to the same facts in a different manner. *See Harrington*, 562 U.S. at 101–02, 131 S. Ct. at 785–86.

To show that his trial counsel was constitutionally ineffective in *state* habeas proceedings, Thomas was required to demonstrate that 1) his counsel's performance was so deficient that they were no longer "functioning as the counsel guaranteed the defendant by the Sixth Amendment" and 2) he was prejudiced by these deficiencies because "there is a reasonable probability that, but for [the] errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687–88, 694, 104 S. Ct. 2052, 2064, 2068 (1984). "Judicial scrutiny of counsel's performance [under this standard] must be highly deferential" and recognizes that there "are countless ways to provide effective assistance in any given case." *Id.* at 689, 104 S. Ct. at 2065. But in *federal* habeas proceedings another layer of deference is added and the "pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. at 101, 131 S. Ct. at 785. Any "reasonable argument that counsel satisfied" the "highly deferential" *Strickland* standard will bar federal habeas relief. *Id.* at 105, 131 S. Ct. at 788.

Under these standards, we conclude that the district court did not err in holding that the state habeas court's adjudication of Thomas's ineffective assistance claim was reasonable.[1]

First, even assuming deficient performance, the state court reasonably concluded that Thomas was not prejudiced by the failure to request a cautionary jury instruction. As the Supreme Court has repeatedly

---

[1] In evaluating Thomas's claims under AEDPA, we "'look through' the Louisiana Supreme Court's summary denial of [Thomas's] petition for review and evaluate the state trial court's reasoned decision." *Brumfield v. Cain*, 135 S. Ct. 2269, 2276 (2015) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 806, 111 S. Ct. 2590, 2596 (1991)).

emphasized, *Strickland*'s prejudice inquiry "asks whether it is reasonably likely the result would have been different" without counsel's deficient performance. *Harrington*, 562 U.S. at 111, 131 S. Ct. at 792. This inquiry necessarily examines the strength of the other evidence in the case weighed against the egregiousness of counsel's error. *See Berghuis v. Thompkins*, 130 S. Ct. 2250, 2264 (2010).

Most importantly, the trial evidence against Thomas was strong. The only three eyewitnesses to the shooting—Thomas's co-conspirators—were in agreement that Thomas shot Gasper and then threw his gun (or told Veal he threw his gun) into the woods along the highway. Veal and Weatherspoon both testified to this series of events during the trial itself. The jury also heard an audio recording of Howard's statement to detectives in which he described these basic facts. Corroborating this damning testimony was video evidence and disinterested witness testimony tying Thomas to Veal, Weatherspoon, and Howard immediately before the shooting. The jury was shown a video of Thomas and his three co-conspirators at a Shell station where Veal learned that his car was on the way to New Orleans. The jury was told that a Shell station employee identified that group as having a gun.

The Supreme Court has found a similar amount of evidence to eliminate any prejudice from counsel's failure to request a jury instruction, *even* under de novo review. In *Berghuis v. Thompkins*, defendant's counsel failed to request a jury instruction regarding evidence that an accomplice (and witness for the defendant) had been acquitted at a separate trial. *Id.* at 2257–58. The defendant's trial strategy was to pin the murder on the accomplice—an angle somewhat complicated by the accomplice's acquittal. *Id.* at 2257. Nevertheless, counsel did not request an instruction that the accomplice's acquittal should be used to judge his own credibility, not the defendant's

substantive guilt, and the defendant claimed this was ineffective assistance. The Court used de novo review and held that there was no prejudice. One eyewitness—supported by a surveillance photograph—identified the defendant as the shooter. *Id.* at 2265. Another witness testified that the defendant confessed to the murder after the fact. Finally, the defendant appeared to have taken steps to destroy evidence. *Id.* at 2265. Given this evidence, the Court concluded that "it was not reasonably likely that the instruction would have made any difference in light of all the other evidence of guilt." *Id.* Likewise, here it was reasonable for the state court to find that a comparable amount of evidence precluded finding prejudice.

Moreover, the jury *was* instructed on the permissible use of the guilty pleas: Veal and Weatherspoon "may be discredited by showing that [they] will benefit in some way by the defendant's conviction . . . or that [they have] any other reason or motive for not telling the truth." In a case that Thomas relies upon in his briefing, this court described a similar instruction as "sufficient to avoid jury consideration of [the accomplice's] plea as relevant to [the defendant's] guilt or innocence." *United States v. King*, 505 F.2d 602, 609 (5th Cir. 1974). Further, a state court could reasonably consider the guilty plea instruction somewhat cumulative. The jury was also instructed that they were to consider the guilt of each defendant separately, and they were informed that it would be possible to find Thomas guilty, but Howard not guilty or vice versa. Juries are presumed to follow their instructions. *See Zafiro v. United States*, 506 U.S. 534, 540, 113 S. Ct. 933, 939 (1993). Surely a jury that understood and followed those instructions would understand that they should also separate Veal's and Weatherspoon's guilt from that of Thomas. It is well established that jury instructions must be evaluated holistically, rather than in isolation. *See Cupp v. Naughten*, 414 U.S. 141, 146–47, 94 S. Ct. 396, 400

No. 14-30469

(1973). The state court could reasonably decide that these jury instructions as a whole lessened any possible prejudice from the omission of the guilty plea instruction.

Finally, the information that Veal and Weatherspoon had pled guilty was itself cumulative: "[T]hat these witnesses had pleaded guilty would add little to their admissible testimony as to the conspiracy and their role in it." *United States v. Pettigrew*, 77 F.3d 1500, 1518 (5th Cir. 1996). Veal and Weatherspoon testified vividly about their and Thomas's decisive roles in the conspiracy to kill Gasper. That they pled guilty—a fact that the jury likely would have surmised because they were testifying for the prosecution and admitting serious crimes—added little more of substance to the case against Thomas.

In sum, it was reasonable under *Strickland* for the state court to conclude that there was no prejudice in this case: the evidence offered against Thomas at trial was very strong and the conceivable effect of omitting a single jury instruction comparatively weak.

Turning to *Strickland*'s performance inquiry, Thomas's counsel did not render deficient performance. Because the state court did not explicitly address the deficient performance inquiry, this issue is arguably not entitled to AEDPA deference.[2] But Thomas cannot show deficient performance under

---

[2] This court's precedent holds that where the state court decided the ineffective assistance claim only by finding there was no prejudice but "did not adjudicate [*Strickland*'s performance] prong on the merits, we review the deficient performance prong of *Strickland* de novo and the prejudice prong under the more deferential [AEDPA] standard." *White v. Thaler*, 610 F.3d 890, 899 (5th Cir. 2010) (citing *Henderson v. Cockrell*, 333 F.3d 592, 601 (5th Cir. 2003)); *see also Loden v. McCarty*, 778 F.3d 484, 494 (5th Cir. 2015) (same in dicta). It is questionable if this line of precedent comports with our court's earlier-in-time en banc decision in *Neal v. Puckett* where we concluded that the focus of our inquiry under AEDPA "should be on the ultimate legal conclusion that the state court reached and not on whether

a less deferential de novo standard, either.  *See Berghuis*, 130 S. Ct. at 2265 ("Courts can . . . deny writs of habeas corpus under § 2254 by engaging in de novo review where it is unclear whether AEDPA deference applies, because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on de novo review.").

As an initial matter, at his evidentiary hearing before the state habeas court, Thomas presented no testimony from his trial counsel explaining why there was no request for a jury instruction.[3]  From this silence, Thomas urges us to infer that counsel was simply too incompetent to ask for the instruction. But this conclusion flies in the face of *Strickland*.  The Supreme Court has, time and again, "specifically command[ed] that a court must indulge the strong presumption that counsel made all significant decisions in the exercise of reasonable professional judgment."  *Cullen v. Pinholster*, 563 U.S. 170, 196, 131 S. Ct. 1388, 1407 (2011) (internal quotation marks and brackets omitted) (quoting *Strickland*, 466 U.S. at 689–90, 104 S. Ct. at 2065–66).  The mere absence of the instruction neither overcomes this presumption nor satisfies Thomas's burden to show deficient performance.  *See Burt*, 134 S. Ct. at 17.[4]

---

the state court considered and discussed every angle of evidence."  286 F.3d 230, 246 (5th Cir. 2002) (en banc) (per curiam).

Nonetheless, since Thomas's counsel did not perform deficiently under any standard of review, we—like the state habeas court—need not consider further an issue that has no bearing on the ultimate outcome of this case.  *See Berghuis*, 130 S. Ct. at 2265.

[3] Counsel was appointed to represent Thomas in state habeas proceedings at least eight months before his state habeas evidentiary hearing, thus there was ample time for counsel to obtain this testimony if it would have been favorable to Thomas.

[4] At the state court evidentiary hearing, Thomas seemed to testify that his counsel requested the guilty plea jury instruction but was rebuffed by the trial judge.  However, Thomas's testimony is not entirely clear on this point, the exchange is nowhere in the trial court record, and the state habeas judge did not find or rely on this fact in his habeas ruling.

This alone could decide this case, but there are substantial reasons to believe that counsel's performance was competent.

There are at least three reasonable justifications for not requesting the instruction. Most important, such an instruction is double-edged: it effectively informs the jury, right before deliberations, about the most damning inference they could draw from Veal's and Weatherspoon's guilty pleas. As Judge Easterbrook has explained: "You can't instruct 'Do not draw inference $X$' without informing the jurors that $X$ is one possible conclusion from the evidence. To tell jurors not to do something is to ensure they will do it, at least for a while. . . . [R]easonable persons may differ about whether the good such an instruction does with a thoughtful juror will outweigh the harm it can do by fastening attention on a link that may have been overlooked or forgotten." *United States v. Myers*, 917 F.2d 1008, 1010–11 (7th Cir. 1990). In the related context of lesser-included offense instructions, this court has recognized that counsel's choice not to request an instruction is a matter of strategy and subject to reasonable debate. *See Druery v. Thaler*, 647 F.3d 535, 539–40 (5th Cir. 2011).[5]

Second, and relatedly, such an instruction might have distracted the jury from the strength of Thomas's most powerful argument: that Veal and Weatherspoon were lying to save themselves. Counsel's opening, cross-examination, and closing were unremitting in accusing Veal and Weatherspoon of lying to get a good deal. The only instruction that addressed their guilty pleas told the jury that Veal and Weatherspoon might be discredited by the fact they stood to gain from the testimony. In *King* this court pointed to this problem: "One legitimate defense consideration might be a

---

[5] *See also Adams v. Bertrand*, 453 F.3d 428, 435 (7th Cir. 2006) (same).

concern . . . that a corrective instruction might call more attention to a witness' guilty plea than the witness' admission [that he had a motive to lie]." 505 F.2d at 608 n.12. Put simply, Thomas's counsel might have reasonably concluded that there was no reason to mention the guilty pleas at all.

Third, counsel may have *wanted* the jury to consider how Veal's and Weatherspoon's guilty pleas reflected on Thomas's guilt. The prosecution's theory of the case was that Thomas pulled the trigger. But it was Veal's car that was stolen. Multiple witnesses told police that Veal was enraged by the theft. The Shell station employee told police she saw Veal with a gun before the shooting. As counsel repeatedly emphasized to the jury, it simply defied common sense that, despite all of this evidence, Thomas pulled the trigger. Reasonable counsel might well have wanted the jury to reflect on the guilty pleas, decide that Veal and Weatherspoon (Veal's cousin) killed Gasper themselves, and acquit Thomas.

Finally, Thomas's counsel rendered reasonable competence throughout the trial. *See Harrington*, 562 U.S. at 111, 131 S. Ct. at 791 ("[I]t is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy."). Far from being asleep at the wheel as the court formulated the jury instructions, he both *successfully* objected to a proposed instruction and requested a rather novel instruction regarding accomplice testimony. Furthermore, Thomas's counsel sharply cross-examined the state's key witnesses, casting doubt on the veracity of the main police detective and relentlessly highlighting Veal's and Weatherspoon's motivations to lie. Thomas's counsel's jury arguments were extended and effective. In other words, at every other turn, Thomas's counsel lived up to the Sixth Amendment's guarantee of reasonable advocacy. *See Yarborough v. Gentry*, 540 U.S. 1, 8, 124 S. Ct. 1, 6 (2003) (per curiam).

No. 14-30469

Thomas offers no evidence to rebut the presumption of his counsel's competence or the evidence of his counsel's *actual* competence, nor to explain away the reasonable justifications for why counsel might have forgone the instruction.  Even under a de novo standard, we find no deficient performance.

## CONCLUSION

For the foregoing reasons, the judgment of the district court denying Thomas relief under 28 U.S.C. § 2254 is **AFFIRMED**.