STUART KYLE DUNCAN, Circuit Judge:
The State of Texas appeals a grant of habeas corpus ordering petitioner David Mejia to be retried for killing Marcos Torres. During a bar fight in 1998, Mejia stabbed Torres in the heart with a steak knife Mejia was carrying in his back pocket. Mejia's experienced attorney, Alex Luna, deployed a self-defense strategy based on Mejia's claim that Torres was threatening him with a gun. Nonetheless, a jury found Mejia guilty of murder and a state court later concluded that Luna had provided Mejia constitutionally effective assistance.
Years later, however, a federal district court ruled that Luna had been ineffective by failing to request certain jury instructions-specifically, a lesser-included-offense instruction for manslaughter at the *311 guilt phase and a "sudden passion" instruction at the penalty phase. The court reasoned Luna had no strategic reason for failing to request these instructions, either of which could have resulted in the jury giving Mejia a sentence much lower than the life sentence he received. The court also ruled that the state habeas court was objectively unreasonable in ruling otherwise.
We conclude that the federal court failed to defer to the state court's reasonable application of Strickland v. Washington , 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and therefore erred in granting Mejia habeas corpus relief. Specifically, we conclude that (1) given Luna's all-or-nothing strategy, he reasonably declined a "double-edged" manslaughter instruction that could have lowered Mejia's chances of an acquittal; (2) even assuming Luna should have sought a sudden passion instruction, it is unlikely that the instruction would have changed Mejia's sentence; and (3) crucially, neither conclusion would have been an objectively unreasonable application of Strickland by the state habeas court.
We therefore VACATE the district court's judgment and RENDER judgment for the State.
I.
A.
Early in the morning of April 17, 1998, outside a small bar called Alicia's Place in Victoria, Texas, David Mejia killed Marcos Torres by stabbing him once in the heart with a steak knife. Mejia had come to Alicia's Place with his friend, Johnny Arce, and three others, planning to confront Torres for a past grievance. Mejia put the steak knife in his back pocket when he arrived, although he claimed he had used the knife in the car to eat a lemon and put the knife in his pocket "by accident" because he "wasn't thinking."
Arce entered the bar and challenged Torres, who followed him outside. Fighting promptly commenced. Witnesses described Torres being surrounded and chased by men from Arce's car. During the fracas, Mejia stabbed and killed Torres and then fled with the others in Arce's car. They went to an apartment where Mejia told someone he had "stabbed some dude," showing how he had pulled the knife from his back pocket and stabbed Torres in the heart. Mejia was heard to say, "I got the motherfucker. I stabbed him."
Four days later Mejia turned himself in. He admitted stabbing Torres but claimed he did so only because Torres had threatened him during the melee by pulling up his shirt to reveal a gun.
B.
Mejia was tried for murder in February 1999. See TEX. PENAL CODE § 19.02(b). His experienced defense attorney, Alex Luna, based his strategy on self-defense. For example, Luna: (1) extensively questioned prospective jurors about self-defense during voir dire; (2) elicited Mejia's testimony claiming Torres had a gun and threatened him; (3) argued that after the stabbing Mejia acted like someone with a clear conscience (i.e. , he turned himself in and did not try to hide the knife); and (4) elicited testimony from a police officer about Torres's history of assault and weapons-related misconduct. During closing, Luna explained why Mejia could have reasonably believed he needed to defend himself with deadly force, and concluded by stating, "[I]f you think that person is going to threaten you or kill you, then you've got the right to defend yourself."
The prosecution painted a different picture. For example, it emphasized that: (1)
*312 Mejia and the others went to the bar looking to confront Torres; (2) on the way to the bar Mejia armed himself with a knife; and (3) Mejia failed to mention that Torres had a gun until he turned himself in four days after the killing, and virtually no witness other than Mejia reported that Torres had a gun.[1] During closing arguments, the prosecution told the jury, "[C]ommon sense tells you that [Mejia] did it intentionally and knowingly. Common sense tells you that he went to that parking lot at Alicia's for a purpose."
Following closing arguments, the trial judge asked Luna about jury instructions:
COURT: Do you have any further requested instructions?
LUNA: No further requested instructions.
COURT: This does not include submission of any lesser-anything on any lesser included offense to the jury, based upon the testimony and the position-and the self-defense instruction. This is the Charge of the Court that you want to submit; is that correct?
LUNA: That is correct.
The jury was instructed on murder and self-defense.[2] Later that morning, the jury returned a verdict rejecting Mejia's self-defense theory and finding him guilty of murder.
The case moved to the penalty phase. Mejia testified and was asked by the prosecution if he believed what he did to Torres was the right thing to do; Mejia responded, "[A]t the time, I did." Luna argued for a lower sentence by emphasizing, among other points, that (1) the evidence showed Mejia was retreating as Torres advanced on him; (2) the evidence did not show "any initial aggression by Mejia"; (3) Mejia "never got rid of the knife, never hid the knife, never made any efforts to hide the knife"; (4) Mejia self-reported to the local police; and (5) the stabbing was a "one wound incident [and] ... not a situation where he stabbed the person three or four times." Given all this, Luna argued that a sentence between "10 and 20 years would be appropriate and reasonable." The prosecution again told a different story. In addition to *313 arguing that Mejia continued to refuse to accept responsibility for the crime, the prosecution also presented evidence about Mejia's criminal history-in particular his juvenile aggravated assault conviction for shooting someone in the back with a .22 pistol and his adult resisting arrest conviction for punching a police officer in the jaw.[3] Noting the "swift verdict returned this morning," the prosecution told the jury "the evidence that you heard ... speaks for itself" and asked for a sentence of "imprisonment for life and a $10,000 fine."
The jury sentenced Mejia to the maximum penalty available under the law-life in prison and a $10,000 fine. TEX. PENAL CODE § 12.32 ("An individual adjudged guilty of a felony of the first degree shall be punished by imprisonment ... for life or for any term of not more than 99 years or less than 5 years" and may be "punished by a fine not to exceed $10,000.").
C.
Mejia's conviction was affirmed on direct appeal. Mejia v. State , No. 13-99-160-CR, 2000 WL 34252057 (Tex. App.-Corpus Christi June 1, 2000, pet. ref'd). Eleven years later, Mejia filed a state habeas application, alleging his attorney failed to notify him of the denial of his direct appeal. He was permitted to file an out-of-time application on August 22, 2012-13 years after the jury's verdict. Ex parte Mejia , No. AP-76, 2011 WL 2420533 (Tex. Crim. App. June 15, 2011). Of the seven grounds raised, only the second is relevant here: Mejia claimed Luna provided ineffective assistance by failing to request (1) a lesser-included-offense instruction of manslaughter at the guilt phase, and (2) a sudden passion instruction at the penalty phase.
The State's response included an affidavit from Luna, which stated in relevant part:
The strategy of the whole trial was self-defense. This was brought out in voir dire and in questioning of all the witnesses. The testimony of the whole trial centered around [Mejia]'s contention that the deceased had a gun. My recollection was that [Mejia]'s position was that he was not guilty of any thing [sic] because of his self defense strategy. That was why he plead[ed] not guilty and agreed to testify on his behalf on this contention of self-defense. There was no evidence of any provocation on behalf of the deceased. Applicant had gone to the confrontation with the knowledge of the purpose and had armed himself with the weapon, a knife.
The state habeas court denied Mejia's application on December 3, 2012. Specifically, the court found that "the affidavit of Applicant's trial attorney Alex Luna is credible," and concluded that Luna "provided effective assistance of counsel." The Texas Court of Criminal Appeals denied review without written opinion on March 20, 2013.
D.
On July 10, 2013, Mejia filed a habeas corpus application in federal district court. The district court appointed counsel and ordered Mejia to submit an amended petition, which he did on September 16, 2016. On October 11, 2017, the district court granted Mejia habeas relief based on ineffective assistance of counsel. Mejia v. Stephens , 289 F.Supp.3d 799 (S.D. Tex. 2017). The court reasoned that Luna performed deficiently in two respects that prejudiced Mejia: first, by failing to request a manslaughter instruction during the guilt *314 phase and, second, by failing to request a sudden passion instruction during the penalty phase. The court also concluded that the state habeas decision finding Luna provided constitutionally effective representation was an unreasonable application of Strickland v. Washington , 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See 28 U.S.C. § 2254(d)(1).
The district court ordered Mejia released unless retried within 180 days but stayed its judgment pending this appeal.
II.
The parties agree that Mejia's § 2254 habeas application is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 110 Stat. 1214. See Lindh v. Murphy , 521 U.S. 320, 326, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). They also agree that the state habeas court adjudicated Mejia's Strickland claims on the merits. Accordingly, we must defer to the state habeas decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1) ; see also, e.g., Woodfox v. Cain , 609 F.3d 774, 794 (5th Cir. 2010).
"AEDPA recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights," Burt v. Titlow , 571 U.S. 12, 19, 134 S.Ct. 10, 187 L.Ed.2d 348 (2013), and AEDPA therefore " 'demands that state-court decisions be given the benefit of the doubt.' " Cullen v. Pinholster , 563 U.S. 170, 181, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011) (quoting Woodford v. Visciotti , 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam) ). Consequently, AEDPA erects a "formidable" standard, Burt , 571 U.S. at 19, 134 S.Ct. 10, that "precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter , 562 U.S. 86, 101, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011) (quoting Yarborough v. Alvarado , 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ). Where, as here, the state merits decision was not accompanied by reasons, a federal court " 'must determine what arguments or theories ... could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e] [Supreme] Court.' " Sexton v. Beaudreaux , --- U.S. ----, 138 S.Ct. 2555, 2558, 201 L.Ed.2d 986 (2018) (quoting Harrington , 562 U.S. at 102, 131 S.Ct. 770 ). "If this standard is difficult to meet-and it is-that is because it was meant to be." Burt , 571 U.S. at 20, 134 S.Ct. 10 (internal quotes omitted).
To prevail on a claim of constitutionally ineffective assistance of counsel, a petitioner must show (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense." Strickland , 466 U.S. at 687, 104 S.Ct. 2052. Deficient performance means that "counsel's representation fell below an objective standard of reasonableness." Id. at 689, 104 S.Ct. 2052. In reviewing counsel's performance, however, courts must be "highly deferential," must eliminate the "distorting effect of hindsight," and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id . Prejudice, in turn, means "a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. 2052. It is not enough, however, to show *315 that errors had "some conceivable effect" on the outcome; rather, counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 693, 104 S.Ct. 2052. "The likelihood of a different result must be substantial, not just conceivable." Harrington , 562 U.S. at 112, 131 S.Ct. 770. Furthermore, a court assessing prejudice "must consider the totality of the evidence before the judge or jury," because "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." Strickland , 466 U.S. at 696, 104 S.Ct. 2052.
"Surmounting Strickland 's high bar is never an easy task." Padilla v. Kentucky , 559 U.S. 356, 371, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010). It is "all the more difficult" where, as here, a defendant challenges a merits denial of his Strickland claim under AEDPA. Harrington , 562 U.S. at 105, 131 S.Ct. 770. "The standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." Id. (citing Knowles v. Mirzayance , 556 U.S. 111, 123, 129 S.Ct. 1411, 173 L.Ed.2d 251 (2009) ) (other citations omitted). Because Strickland is a general standard, "a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Knowles , 556 U.S. at 123, 129 S.Ct. 1411 (citing Yarborough , 541 U.S. at 664, 124 S.Ct. 2140 ); see also Harrington , 562 U.S. at 105, 131 S.Ct. 770 ("The Strickland standard is a general one, so the range of reasonable applications is substantial."). And when a federal court reviews a Strickland claim under § 2254, "the question is not whether counsel's actions were reasonable," but "whether there is any reasonable argument that counsel satisfied Strickland 's deferential standard." Id. Finally, it is well settled that a state court's "unreasonable application of [ Strickland ]"-which AEDPA demands-"is different from an incorrect application of [ Strickland ]." Id. at 101, 131 S.Ct. 770 (quoting Terry Williams v. Taylor , 529 U.S. 362, 410, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) ) (emphasis in original).
"This Court reviews a district court's grant of summary judgment in a habeas proceeding de novo." Ogan v. Cockrell , 297 F.3d 349, 356 (5th Cir. 2002). However, "when considering a motion for summary judgment in the context of habeas corpus cases, the state court's factual findings are presumed correct unless the petitioner can show by clear and convincing evidence that the presumption should not apply." Norris v. Davis , 826 F.3d 821, 827-28 (5th Cir. 2016), cert. denied , --- U.S. ----, 137 S.Ct. 1203, 197 L.Ed.2d 250 (2017) (citing 28 U.S.C. § 2254(e)(1) ).
III.
We first address the district court's conclusion that Mejia's defense attorney, Luna, provided ineffective assistance by declining to request a guilt-phase instruction for manslaughter. Relying principally on our decision in Richards v. Quarterman , 566 F.3d 553 (5th Cir. 2009), the district court reasoned that Luna's affidavit showed he mistakenly assumed his self-defense strategy precluded him from requesting a manslaughter instruction. The court thus rejected the State's argument that Luna reasonably declined the manslaughter instruction because his "all-or-nothing" acquittal strategy could have been undermined by giving the jury the option of convicting Mejia for a lesser-included offense. To the contrary, the court thought Luna "could have argued both theories" and "could have argued that self-defense justified an 'all-out' acquittal for manslaughter as well as for murder." The court also concluded that Luna's error *316 prejudiced Mejia's defense by depriving the jury of an option that would have given Mejia a maximum sentence of only 20 years, instead of the life sentence he received. Finally, the court concluded that the state habeas decision to the contrary was "an unreasonable application of Strickland ," thus justifying habeas relief under AEDPA.
We disagree with the district court that the state habeas court unreasonably applied Strickland . Because we limit our analysis to deficient performance, we need not reach prejudice. See United States v. Molina-Uribe , 429 F.3d 514, 518 n.7 (5th Cir. 2005) ("Because counsel's performance was not constitutionally deficient, we do not reach the prejudice prong.").
Defense counsel's " 'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengable.' " Rhoades v. Davis , 852 F.3d 422, 434 (5th Cir. 2017) (quoting Strickland , 466 U.S. at 690, 104 S.Ct. 2052 ). A court reviewing those choices is required " 'not simply to give [counsel] the benefit of the doubt ... but to affirmatively entertain the range of possible reasons [he] may have had for proceeding as [he] did.' " Feldman v. Thaler , 695 F.3d 372, 380 (5th Cir. 2012) (quoting Pinholster , 131 S.Ct. at 1407 ) (first brackets added). We have explained that counsel is afforded particular leeway where a potential strategy carries "double-edged" consequences. St. Aubin v. Quarterman , 470 F.3d 1096, 1103 (5th Cir. 2006). For instance, we have held that " 'a tactical decision not to ... present potentially mitigating evidence on the grounds that it is double-edged in nature is objectively reasonable, and therefore does not amount to deficient performance.' " Id. (quoting Rector v. Johnson , 120 F.3d 551, 564 (5th Cir. 1997) ); see also, e.g., Mann v. Scott , 41 F.3d 968, 984 (5th Cir. 1994) (strategic decisions with "double-edged" consequences "are 'granted a heavy measure of deference in a subsequent habeas corpus attack' ") (quoting Wilkerson v. Collins , 950 F.2d 1054 (5th Cir. 1992) ).
This "double-edged" principle extends to counsel's tactical decision to forego a lesser-included-offense instruction to which his client would otherwise be entitled. In Druery v. Thaler , for example, we held that counsel did not err by foregoing a lesser-included-offense instruction to Texas capital murder where counsel "articulated a valid strategic reason for declining the instruction: to obtain a full acquittal." 647 F.3d 535, 540 (5th Cir. 2011). Indeed, even though counsel was "mistaken in part" about the availability of the instruction, we held that "this all-or-nothing strategy was not objectively unreasonable" under Strickland because counsel's "ultimate strategic choice was reasonable." Id. ; see also Thomas v. Vannoy , 651 F. App'x 298, 303-04 (5th Cir. 2016) (unpublished) (explaining that, "[i]n the ... context of lesser-included offense instructions, this court has recognized that counsel's choice not to request an instruction is a matter of strategy and subject to reasonable debate") (citing Druery ). Such a decision "dwells in the region of tactics and strategy," because the lesser-included offense instruction could "increase the chance of conviction on some charge," while foregoing it "could ... le[a]d to a complete acquittal." Adams v. Bertrand , 453 F.3d 428, 435-36 (7th Cir. 2006) (brackets added).
The state habeas court could have reasonably concluded that Luna made an informed choice to pursue an all-or-nothing strategy and thus reasonably declined a double-edged manslaughter instruction. Luna's affidavit-found "credible" by the state habeas court and unchallenged by Mejia, see 28 U.S.C. § 2254(e)(1) -explains *317 that "[t]he strategy of the whole trial was self-defense," which Luna pursued "in voir dire and in questioning of all the witnesses." This strategy grew out of Mejia's "contention that [Torres] had a gun," and sought to carry out "[Mejia's] position that he was not guilty of any thing [sic ]," which was why Mejia "plead[ed] not guilty and agreed to testify on his behalf on this contention of self-defense." Under the double-deference required by AEDPA, the state habeas court would not have been "unreasonable" in concluding that Luna's all-or-nothing strategy-either murder conviction or acquittal-was a " 'strategic choice[ ] made after thorough investigation of law and facts relevant to plausible options' " that was " 'virtually unchallengeable.' " Rhoades , 852 F.3d at 434 (quoting Strickland , 466 U.S. at 690, 104 S.Ct. 2052 ).
Given that strategy, the state habeas court also could have reasonably concluded that accepting a manslaughter instruction would have created a double-edged problem for Mejia. To be sure, it would have given the jury a way-station between a murder conviction and an acquittal. But it also could have lowered Mejia's chances for obtaining an acquittal. See, e.g., Adams , 453 F.3d at 436. And by agreeing to a manslaughter instruction, Luna would have invited the jury to consider whether Mejia had "recklessly" caused Torres's death, TEX. PENAL CODE § 19.04(a), which would have entailed a finding that Mejia's actions "consciously disregard[ed] a substantial and unjustifiable risk" of killing him, id. § 6.03(c); see also, e.g., Alonzo v. State , 353 S.W.3d 778, 782 (Tex. Crim. App. 2011). Inviting a jury to consider recklessness could have easily undermined Mejia's insistence he was "not guilty of anything," making conviction more likely and acquittal less likely. See TEX. PENAL CODE § 9.32 (a)(2) (deadly force justified "when and to the degree the actor reasonably believes the deadly force is immediately necessary" to protect against another's attempted use of deadly force); Alonzo , 353 S.W.3d at 782 ("[B]y arguing self-defense, a defendant is arguing that his actions were justified, and therefore he did not act recklessly."); see also, e.g., United States v. Myers , 917 F.2d 1008, 1010 (7th Cir. 1990) (counsel did not err by failing to seek "cautionary instruction" because "[y]ou can't instruct 'Do not draw inference X ' without informing the jurors that X is one possible conclusion from the evidence").
Those are precisely the kinds of double-edged consequences we have previously recognized as precluding a finding of counsel's deficient performance. Druery , 647 F.3d at 539-40 ; Thomas , 651 F. App'x at 303-04. "Even under de novo review," a court would be "most deferential" to such strategic choices, because "[u]nlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge." Harrington , 562 U.S. at 105, 131 S.Ct. 770. A fortiori , under AEDPA the state court would not have been "unreasonable" to conclude that Luna did not err by declining a manslaughter instruction. See Harrington , 562 U.S. at 101, 131 S.Ct. 770 (explaining "[t]he pivotal question [under AEDPA] is whether the state court's application of the Strickland standard was unreasonable," which is "different from asking whether defense counsel's performance fell below Strickland 's standard").
The district court erred by concluding otherwise. To begin with, the court mistakenly concluded from Luna's affidavit that he believed, wrongly, that a manslaughter instruction "would have precluded ... his self-defense theory." The court therefore thought this case was controlled by *318 Richards v. Quarterman , 566 F.3d 553 (5th Cir. 2009). We disagree. In Richards , we found an attorney defending a murder charge erred by not requesting a lesser-included-offense instruction on assault. Id. at 569-70. We did so, however, based on the attorney's explicit testimony showing that she "misunderstood the [Texas] law governing lesser-included offenses"-specifically, that she "erroneously believed" such an instruction is unavailable "unless the State raises the elements of the lesser offense." Id. at 569, 568. Luna's affidavit, by contrast, neither states nor suggests any such misunderstanding about the law: it simply states that "[t]he strategy of the whole trial was self-defense," and that his client's position was that he was "not guilty of anything." Moreover, the trial record shows only that Luna was asked by the court to confirm that he did not request any lesser-included-offense instructions; it contains no statement indicating he misunderstood the law of lesser-included offenses. This is a far cry from Richards , where defense counsel candidly testified she thought it would be "frivolous" to request an assault instruction that, in truth, her client was plainly entitled to and that would have given the jury a ready alternative to a murder charge. Id. at 569 ; see also, e.g., Shanklin v. Thaler , 422 F. App'x 319, 326 (5th Cir. 2011) (unpublished) (explaining that Richards found defense counsel's failure to request a lesser-included-offense instruction "was deficient and not a strategic decision" given that counsel's strategy "lacked even fair support in the record").
But even assuming arguendo that Luna's affidavit was ambiguous, we would still find the district court erred. The court failed to afford any deference to counsel's strategic choices and, more importantly, to the state habeas court's review of them. Even if AEDPA did not apply, Luna's decision to forego a manslaughter instruction should have received "most deferential" review, Harrington , 562 U.S. at 105, 131 S.Ct. 770, "indulg[ing] a strong presumption that [Luna]'s conduct f[e]ll[ ] within the wide range of reasonable professional assistance." Strickland , 466 U.S. at 689, 104 S.Ct. 2052 (brackets added). Quite the opposite presumption is evident in the district court's opinion, which speculates that Luna "could have argued both theories" (i.e. , manslaughter and self-defense) and that doing so would not have been " 'double-edged' ... because no harm to Mejia's defense would have resulted from requesting the instruction."[4] That analysis is inconsistent with Strickland , which cautions federal courts to resist the "tempt[ation] ... to second-guess counsel's assistance" and warns that "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to *319 conclude that a particular act or omission of counsel was unreasonable." 466 U.S. at 690, 104 S.Ct. 2052.[5]
In any event, the reasonableness of Luna's decision not to pursue a manslaughter instruction is not the question before us, just as it was not the question before the district court. Under AEDPA, rather, the "pivotal question" is whether the state habeas court "unreasonably" applied Strickland in determining that Luna provided effective assistance. Harrington , 562 U.S. at 101, 131 S.Ct. 770 ; see also ids="12439786,6005083" index="120" url="https://cite.case.law/us/562/86/">id. at 105, 131 S.Ct. 770 (warning "federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d)"). That is not a difficult question. As explained, the state habeas court could have reasonably determined under Strickland that Luna made an informed choice to decline a manslaughter instruction that could have lowered the prospects of an all-out acquittal on the murder charge. Nothing in this record suggests the state habeas ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103, 131 S.Ct. 770. To be sure, the district court thought Luna should have pursued a different strategy that involved a lesser-included-offense instruction, but "[AEDPA] and Strickland ... do not permit federal judges to so casually second guess the decisions of their state-court colleagues or defense attorneys." Burt , 134 S.Ct. at 15. The question is not whether "perhaps looking back it would have been wiser for counsel to press for a conviction on a compromise verdict ... [because] we will not pick apart counsel's strategic choice with the benefit of hindsight." Lopez v. Thurmer , 594 F.3d 584, 588 (7th Cir. 2010) (internal quotation marks omitted).
IV.
We next address the district court's conclusion that Luna provided ineffective assistance by not seeking a "sudden passion" instruction during the penalty phase and that the state habeas court unreasonably concluded otherwise. A defendant charged with murder in Texas may prove he caused death "under the immediate influence of a sudden passion arising from an adequate cause," reducing the maximum penalty to twenty years. TEX. PENAL CODE §§ 19.02(d) ; 12.33. "Sudden passion" means "passion directly caused by and arising out of provocation by the individual killed ... which passion arises at the time of the offense and is not solely the result of former provocation." Id. § 19.02(a)(2). "Adequate cause" means "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." Id. § 19.02(a)(1). A sudden passion instruction is warranted if supported by "some evidence," even evidence that is "weak, impeached, contradicted, or unbelievable." Beltran v. State , 472 S.W.3d 283, 290 (Tex. Crim. App. 2015).
The district court concluded Luna erred by not seeking a sudden passion instruction, because that theory was "consistent" with Luna's penalty-phase arguments that Mejia did not intend to kill Torres but only *320 "reacted by stabbing [him] once" when Mejia thought Torres was "pulling for [a] gun." Additionally, the court found prejudice because a sudden passion defense "would have fit with" and "given greater weight to" Luna's penalty-phase arguments for a reduced sentence. "If the jury had credited Mejia's evidence," the court reasoned, then a sudden passion defense "would have given them a means to express that opinion" by sentencing Mejia to a maximum of 20 years instead of life. The district court concluded that the state habeas court unreasonably applied Strickland in concluding otherwise.
We disagree. We resolve this issue on Strickland 's prejudice prong and thus assume without deciding that Luna erred in not seeking a sudden passion instruction (and that the state habeas court unreasonably ruled otherwise). See Pondexter v. Dretke , 346 F.3d 142, 147 (5th Cir. 2003) (declining to reach deficiency prong where prejudice not shown). Prejudice under Strickland means a "reasonable probability" that, absent counsel's error, the outcome would have been different. 466 U.S. at 694, 104 S.Ct. 2052. "The likelihood of a different result must be substantial, not just conceivable," Harrington , 562 U.S. at 112, 131 S.Ct. 770, considering "the totality of the evidence before the judge or jury." Strickland , 466 U.S. at 696, 104 S.Ct. 2052. Finally, because AEDPA applies, the question is not whether the state habeas court correctly found a lack of prejudice from Luna's ostensible error, but whether that ruling was "an unreasonable application" of Strickland 's prejudice standard. Dorsey v. Stephens , 720 F.3d 309, 314 (5th Cir. 2013) (quoting Harrington , 562 U.S. at 785, 131 S.Ct. 770) (emphasis in original). "This distinction creates 'a substantially higher threshold' for obtaining relief than de novo review, ... and 'demands that state-court decisions be given the benefit of the doubt.' " Renico v. Lett , 559 U.S. 766, 773, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010) (quoting Schriro v. Landrigan , 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007) ; Woodford , 537 U.S. at 24, 123 S.Ct. 357 ). For multiple reasons, we conclude that the state court did not unreasonably apply Strickland in finding no prejudice to Mejia's sentence from Luna's failure to request a sudden passion instruction.
To begin with, the jury that would have considered sudden passion at sentencing had already rejected Mejia's self-defense theory at the guilt phase. The state habeas court could have reasonably concluded that "[i]t is highly unlikely that a jury that had already rejected [Mejia's] claim that he reasonably believed that deadly force was immediately necessary to defend himself would nevertheless find in his favor on the issue of sudden passion." Wooten v. State , 400 S.W.3d 601, 609-10 (Tex. Crim. App. 2013). We thus disagree with Mejia's argument on appeal that the jury likely could have found sudden passion based on the idea that Torres "provoked" him by threatening him with a gun, causing Mejia to experience "terror" and rendering his "mind incapable of cool reflection." TEX. PENAL CODE § 19.02(a)(1), (a)(2). This overlooks the glaring fact that the same jury had already rejected Mejia's self-defense theory premised on the same claim that Torres had threatened Mejia with a gun . A jury previously unmoved by Mejia's guilt-phase argument that "Torres had a gun, and I had to defend myself!" was unlikely to accept Mejia's penalty-phase argument that "Torres had a gun, and I was provoked into stabbing him!" See, e.g., Benavides v. State , 992 S.W.2d 511, 525 (Tex. App.-Houston [1st Dist.] 1999, pet. ref'd) (observing that ordinarily, "[i]f the same evidence raising a fact issue on self-defense also raises an issue on 'sudden passion', then it must also be true that ...
*321 when the State's evidence is sufficient to overcome a claim of self-defense, it will also be sufficient to show the absence of sudden passion"). To understate matters considerably, that conclusion would not have been an "objectively unreasonable" application of Strickland . Renico , 559 U.S. at 773, 130 S.Ct. 1855.
Furthermore, the jury could have found that a sudden passion defense was implausible given the totality of the evidence against Mejia. The jury might well have accepted the prosecution's case showing that (1) Mejia allied himself with a gang seeking to confront Torres about a past grievance to Arce; (2) before arriving at the planned confrontation, Mejia armed himself with a steak knife; and (3) the notion that Torres had a gun in the first place was a post-hoc, uncorroborated fabrication by Mejia. At a minimum, the jury could have easily concluded that arming oneself in anticipation of a violent showdown tends to show deliberation and is therefore inconsistent with a claim of sudden passion. See, e.g., Rivas v. State , 473 S.W.3d 877, 885 (Tex. App.-San Antonio 2015, pet. ref'd) (observing that "[s]uch evidence showing that a defendant anticipated the event and prepared himself to respond to the expected altercation tends to show deliberation and undermines a claim of sudden passion"). To be sure, as the district court reasoned, the jury might have instead "credited Mejia's evidence"-for instance, believing that (1) Mejia was telling the truth about seeing Torres pull out a gun, despite the fact that no one interviewed by the police at the fight scene reported seeing Torres with a gun; and (2) Mejia was telling the truth that he put a steak knife in his back pocket on the way to a fight by accident . Anything is possible. But Strickland demands that the chance of a different outcome be "substantial, not just conceivable," Harrington , 562 U.S. at 112, 131 S.Ct. 770, and on top of that AEDPA demands that a state court's ruling on prejudice be, not merely wrong, but "objectively unreasonable." Renico , 559 U.S. at 773, 130 S.Ct. 1855. The state habeas court's prejudice ruling does not rise to anywhere near that level.
Finally, the jury had enormous discretion to sentence Mejia anywhere from 5 years to life,[6] and yet gave him the harshest sentence available. It did so despite Luna's penalty-phase arguments that Mejia deserved only 10 to 20 years because (1) Mejia was retreating as Torres advanced; (2) there was no evidence of Mejia's "initial aggression"; (3) Mejia never hid the knife; (4) Mejia self-reported to local police; and (5) the stabbing was a "one wound incident." Importantly, "sudden passion" would not have been submitted as a standalone question which the jury might have thought it was answering in the abstract. Instead, the jury would have been told that an affirmative sudden passion finding would limit Mejia's sentence to a maximum of 20 years,[7] a number the jury had already resoundingly rejected by awarding the highest-possible sentence. It is thus highly unlikely that the *322 same jury would have nevertheless found-if only given the opportunity-that Mejia's actions were the product of sudden passion. In other words, the record does not suggest a "substantial likelihood" that Mejia's jury would have found his crime was mitigated by Torres's putative provocation. The state habeas court would not have been unreasonable in reaching that conclusion. See, e.g., Newkirk v. State , 506 S.W.3d 188, 197 (Tex. App.-Texarkana 2016, no pet.) (explaining that "merely showing that a sudden-passion instruction would have given the jury another sentencing opinion is not enough to demonstrate prejudice under Strickland " and rejecting defendant's Strickland claim because defendant had not established a reasonable probability of a less harsh sentence).
V.
For the foregoing reasons, we conclude that the district court erred in granting Mejia's application for writ of habeas corpus. We therefore VACATE the district court's judgment and RENDER judgment for the State.

Two of Mejia's compatriots, Arce and Martin Martinez, testified that Mejia did not mention a gun as they fled the scene. Two others (John Gomez and Lorenzo Dominquez)-who were present at the apartment with Mejia following the stabbing-also testified that Mejia did not mention a gun. Only Mejia's sister, Macaria Flores, testified that Mejia mentioned a gun that night. But her testimony contradicted itself: she first testified that Mejia did not mention a gun, but then claimed that she could not "recall" and that she was "nervous." In any event, none of Flores's three written statements to police corroborated her eventual testimony that Mejia spoke of a gun on the night of the stabbing.
Furthermore, none of the bystanders at the crime scene testified seeing Torres with a gun. Officer Brian Cross testified there were 30-40 people at the scene and no one reported Torres had a gun. Likewise, former Detective David Melenkivitz testified that he and other officers interviewed 15-20 people, some related to Mejia, and none reported seeing Torres with a gun. Witnesses who knew Torres (Dennis Torres, Demetrio Torres, and Henry De Los Santos), all testified that Torres did not have a gun that night, that as far as they knew Torres did not own a gun, and that they had never seen Torres with a gun. No gun was recovered from the scene.

The relevant elements of murder are that a person "intentionally or knowingly causes the death of an individual" or "intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual." Tex. Penal Code § 19.02(b)(1), (2). The relevant elements of self-defense are that a person "is justified in using deadly force against another ... when and to the degree the actor reasonably believes the deadly force is immediately necessary ... to protect the actor against the other's use or attempted use of unlawful deadly force." Tex. Penal Code § 9.32(a)(2)(A).

For his part, Mejia denied during his sentencing testimony that he was the shooter in the aggravated assault and that he struck the officer in his resisting arrest conviction.

As already explained, the issue was not whether Luna could have argued both manslaughter and self-defense-no one disputes Texas law permitted that option. See, e.g., Martinez v. State , 775 S.W.2d 645, 647 (Tex. Crim. App. 1989) (en banc). Rather, the issue was whether Luna could have reasonably chosen to deprive the jury of the manslaughter option in order to increase his client's chances of a self-defense acquittal. That is a different question the district court failed to consider. The court also did not explain why a manslaughter instruction would pose "no harm to Mejia's defense," failing to cite or discuss any of our cases explaining why such an instruction can be double-edged when a defendant reasonably pursues an all-or-nothing strategy. See, e.g., Druery , 647 F.3d at 539-40 ; Thomas , 651 F. App'x at 303-04 ; Shanklin , 422 F. App'x at 326-28. Finally, to the extent the district court mistakenly relied on a theory that Luna was required to pursue manslaughter because he had "nothing to lose," the Supreme Court has disclaimed establishing such a standard for Strickland claims. See Knowles , 556 U.S. at 122, 129 S.Ct. 1411 ("This Court has never established anything akin to the 'nothing to lose' standard for evaluating Strickland claims.").

Indeed, indulging the presumption required by Strickland , we have found effective representation even where counsel was "mistaken in part of his legal reasoning" for declining a lesser-included-offense instruction so long as counsel's "ultimate strategic choice"-an "all-or-nothing strategy"-was "reasonable." Druery , 647 F.3d at 540. This case is easier than Druery because there is no evidence that Luna's decision was based, even partially, on a misunderstanding about the law of lesser-included offenses.

See Tex. Pen. Code § 12.32 ("An individual adjudged guilty of a felony of the first degree shall be punished by imprisonment ... for life or for any term of not more than 99 years or less than 5 years" and may be "punished by a fine not to exceed $10,000.").

Both parties agreed that Mejia's jury would have been instructed that a sudden passion finding caps a sentence at 20 years. See, e.g., Booker v. State , No. 09-16-00049-CR, 2017 WL 6375161, at *7 (Tex. App.-Beaumont Sept. 11, 2017, no pet.) (if defendant "had been entitled to [a] ... sudden passion [instruction], the jury ... would have been instructed that ... the offense would be punishable by imprisonment for two to twenty years"); see also Texas Criminal Jury Charges at 114 (1997-1998).