# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 26, 2022

Lyle W. Cayce
Clerk

No. 21-70011

JAIME PIERO COLE,

*Petitioner—Appellant*,

*versus*

BOBBY LUMPKIN, DIRECTOR, TEXAS DEPARTMENT OF
CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

*Respondent—Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:17-cv-940

Before STEWART, HAYNES, and HO, *Circuit Judges*.

PER CURIAM:*

In 2011, a Texas jury convicted Jaime Piero Cole of capital murder and
sentenced him to death for murdering his estranged wife and 15-year-old
stepdaughter. After exhausting his state remedies, Cole filed a petition under
28 U.S.C. § 2254 for a writ of habeas corpus in federal district court raising

---

* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this
opinion should not be published and is not precedent except under the limited
circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

sixteen issues. The state moved for summary judgment on all issues. The district court granted summary judgment, denied Cole's habeas petition, and declined to grant Cole a certificate of appealability ("COA").

Cole now asks this court to issue a COA on whether his trial counsel was ineffective for failing to take three actions: (1) investigate and present evidence of the trauma he suffered due to his adoption from Ecuador by an American family; (2) investigate and present evidence of his exposure to neurotoxins as a child and resulting brain damage; and (3) object to the trial court's statement to venire members that if he were sentenced to death his case would receive automatic appellate review. For the reasons that follow, we DENY Cole's request for a COA.

## I. Facts & Procedural History

In January 2010, Cole's wife moved out of their home to an apartment in Harris County, taking the couple's two young sons and her daughter from a previous relationship. On February 3, 2010, while his sons were in his custody, Cole purchased a pistol. The next day, Cole returned the boys to his wife's apartment. Cole and his wife began arguing inside the apartment. At the urging of Cole's stepdaughter, he and his wife moved their argument outside. Once outside, Cole fatally shot his wife with his new pistol. He then reentered the apartment and killed his stepdaughter, who had witnessed the first murder. While exiting the apartment, Cole aimed his pistol at his wife's nine-year-old niece, who was visiting, but he had fired all his bullets. Cole fled with his two-year-old son and was later apprehended at a Walmart in Wharton County, where he had purchased ammunition, diapers, and food.

A grand jury indicted Cole for capital murder under Texas Penal Code § 19.03(a)(7)(A) for killing his wife and stepdaughter during the same criminal transaction. After a trial, a jury found Cole guilty of capital murder as charged in the indictment. The trial court sentenced Cole to death based

No. 21-70011

on the jury's findings that he constituted a continuing threat to society and that there were insufficient mitigating circumstances to warrant a life sentence. *See* Tex. Code Crim. Proc. art. 37.071 § 2(b)(1)–(2), (e)(1).

Cole sought automatic direct review in the Texas Court of Criminal Appeals, which affirmed his conviction and sentence. *Cole v. State*, No. AP-76,703, 2014 WL 2807710, at *1 (Tex. Crim. App. June 18, 2014). The Supreme Court denied Cole's petition for certiorari. *Cole v. Texas*, 135 S. Ct. 1154 (2015). Meanwhile, Cole filed a state habeas application raising eight grounds for relief. The state habeas court denied his application. The Texas Court of Criminal Appeals affirmed. *Ex Parte Cole*, No. WR-84,322-01, 2017 WL 562725, at *2 (Tex. Crim. App. Feb. 8, 2017). The Supreme Court again denied certiorari. *Cole v. Texas*, 138 S. Ct. 90 (2017).

Cole timely filed a § 2254 petition for a writ of habeas corpus in federal court, which he subsequently amended. The amended petition raised several issues that were not litigated in the state habeas proceedings, including issues two and three here: whether his trial counsel was ineffective for failing to investigate and present evidence of his exposure to neurotoxins, and whether his trial counsel was ineffective for failing to object to the trial court's statement regarding automatic review. Accordingly, the district court stayed the case to allow Cole to exhaust his state court remedies. The Texas Court of Criminal Appeals determined that Cole's new claims did not satisfy the requirements for filing a successive state habeas application and therefore dismissed the "application as an abuse of the writ without considering the merits of the claims." *Ex parte Cole*, No. WR-84,322-02, 2020 WL 1542118, at *1 (Tex. Crim. App. Apr. 1, 2020). The district court then lifted the stay, and Cole amended his petition again. On the state's motion for summary judgment, the district court denied Cole's operative petition for federal habeas relief and a COA. Cole filed a motion to amend the judgment, which the district court denied. Cole now seeks review before this court.

3

No. 21-70011

## II. Standard of Review

Before receiving a ruling on the merits of his habeas petition, Cole must first obtain a COA from this court. 28 U.S.C. § 2253(c)(1). To obtain a COA, he must demonstrate "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This is a "threshold question" concerning only whether "'jurists of reason could disagree with the district court's resolution of [the petitioner's] constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (quoting *Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003)). In other words, this court "'should limit its examination [at the COA stage] to a threshold inquiry into the underlying merit of [the] claims,' and ask 'only if the District Court's decision was debatable.'" *Id.* (quoting *Miller–El*, 537 U.S. at 327, 348).

Where the state court reached the merits of the petitioner's claims, "our review is constrained by the deferential standards of review found in the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254 ('AEDPA')." *Halprin v. Davis*, 911 F.3d 247, 254–55 (5th Cir. 2018). In such circumstances, a federal court cannot grant habeas relief unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2). An application of clearly established federal law is unreasonable if "the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Halprin*, 911 F.3d at 255 (quotation omitted).

Thus, to obtain a COA on the state court's merits rulings, Cole "must show that jurists of reason could disagree with the district court's conclusion that the state court's decision was not an unreasonable application of clearly established federal law and was not based upon an unreasonable determination of the facts in light of the evidence presented." *Id.*

Where a district court denies a habeas petition on procedural grounds without addressing the petition's merits, the petitioner is entitled to a COA if he "shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* at 254 (quotation omitted). Because this is a capital case, we must resolve in Cole's favor "any doubt as to whether a COA should issue." *Escamilla v. Stephens*, 749 F.3d 380, 387 (5th Cir. 2014) (quoting *Pippin v. Dretke*, 434 F.3d 782, 787 (5th Cir. 2005)).

## III. Discussion

Cole seeks a COA on three issues related to trial counsel's failure to investigate and present evidence of certain mitigating circumstances, and to trial counsel's failure to object to certain comments made by the trial court. Cole alleges that, by failing to take these actions, trial counsel violated his Sixth Amendment right to effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). To establish an ineffective assistance of counsel claim, Cole must show that (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense." *Id.* at 687. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. The defendant bears the burden to show deficient performance. *Burt v. Titlow*, 571 U.S. 12, 22–23 (2013). To demonstrate prejudice, Cole must show "that but for his counsel's

No. 21-70011

deficiency, there is a reasonable probability [he] would have received a different sentence." *Porter v. McCollum*, 558 U.S. 30, 41 (2009). The combination of *Strickland* and AEDPA leads to "double-deference." *See, e.g., Mejia v. Davis,* 906 F.3d 307, 317 (5th Cir. 2018). Thus, we must assess whether jurists of reason would dispute these issues in light of these standards. We address below Cole's requests for a COA with respect to each of his claims.

### A. Childhood Trauma

Cole first requests a COA on trial counsel's failure to investigate and present evidence of the trauma he suffered as a child when an American family adopted and relocated him from Ecuador, separating him from his biological family. Allegedly, trial counsel was deficient for not (1) presenting available mitigation evidence from lay witnesses who knew Cole in Ecuador, including his biological mother and sister, and from Cole's adoptive family and friends; or (2) obtaining a mental health expert to opine on the continuing effects of this trauma.

The district court rejected this claim, concluding that the state habeas court's decision denying habeas relief was reasonable because "trial counsel presented ample evidence to allow jurors to understand that Cole's adoption was difficult for him and that its effects reverberated into his adulthood." The district court added that, rather than rely on expert testimony, "[t]rial counsel made a strategic decision to use lay witnesses who knew Cole to connect the suffering resulting from his childhood adoption and move from his biological mother and native country to his adult despair at his wife's departure." The district court also agreed with the state court's finding that "trial counsel presented essentially the same evidence" as the expert testimony Cole now proffers. Cole disagrees with these findings and maintains that reasonable jurists can debate whether his counsel was

6

ineffective. The state responds that the district court's findings are not debatable.

Cole has not made a substantial showing on at least the first *Strickland* prong—that trial counsel performed deficiently. During the penalty phase of the trial, Cole's counsel presented testimony from his biological mother and sister. Cole's biological mother testified that she raised Cole as a poor, single mother in Ecuador and that, when Cole was eight years old, she allowed an American couple to adopt him. She also explained that when Cole visited Ecuador a year after his adoption, she hid Cole from his adoptive mother to prevent his return to the United States. In response, Cole's adoptive mother called the police, who located Cole and forcibly removed him from his biological mother. Cole then returned to the United States and did not see his biological mother again for nearly a decade. Cole's biological sister testified that she was five years old when the police took Cole and that she had "few memories" of the incident.

Trial counsel also presented testimony from Sharon Boyd, who was briefly Cole's psychotherapist, and from Dr. Terry Rustin, a psychiatrist who specializes in addiction. Boyd's "job is to help people deal with their lives better [and] to process their history and their traumas." She testified that, in her two sessions with Cole immediately before the murders, they discussed Cole's "being adopted" and how alcoholism had affected his life. She added that Cole "brought up issues from his childhood and growing-up years" and that they processed "the feelings attached to [those years]." Dr. Rustin testified that he relied on Boyd's records and reports, among other items, to diagnose Cole with an "adjustment disorder," caused by his marital issues, that combined with his alcoholism to reduce his culpability. Moreover, Dr. Rustin opined that the amount of alcohol that Cole regularly imbibed made him more impulsive, aggressive, and self-centered, and caused him to make poor decisions.

No. 21-70011

Cole now proffers evidence that allegedly should have been presented at trial. First, he submits affidavits from his biological family that further detail the circumstances of his forced removal from Ecuador when he returned after his adoption. These affidavits describe Cole and his family crying while the police "pulled him from [his mother's] arms by force" because he wanted to remain in Ecuador. Second, Cole provides the expert opinion of Dr. David Wachtel, a forensic psychologist who opined that Cole's childhood trauma stunted his emotional and psychological development and contributed to his alcoholism. Dr. Wachtel stated that Cole's traumatic adoption contributed to his alcoholism and his "compromised emotional functioning [and] difficulties with interpersonal relationships." It also inhibited his ability to "regulate his behavior."

This "trauma" evidence substantially overlaps with the evidence presented at trial, and jurists of reason would not debate that trial counsel was not ineffective for presenting it through lay witnesses and other experts, rather than in the form Cole currently prefers. After all, "counsel has wide latitude in deciding how best to represent a client." *Clark v. Thaler*, 673 F.3d 410, 427 (5th Cir. 2012) (quotation omitted). The fact that trial counsel did not call witnesses who explicitly described Cole's childhood experiences as "traumatic" does not alter our conclusion that the district court's assessment is not debatable by jurists of reason. The affidavits that Cole proffers are not materially different from the testimony of Cole's biological mother that the police involuntarily took him from her. What is more, trial counsel plainly connected Cole's experience "[a]s a little boy" being "separated from his birth mother" to his conduct after his wife left him. Trial counsel also described the "tearful separation between an 8-year-old boy and his mama" and argued that Cole carried with him as an adult "the pain of being taken away from his real mother." Finally, although trial counsel did not retain an expert to opine directly on Cole's trauma, the testimony of Boyd

and Dr. Rustin made the same point—that Cole's life experiences combined with his alcoholism to reduce his culpability.

Because reasonable jurists could not debate that the district court correctly deferred to the state court's adjudication of this claim, we deny Cole's request for a COA on this issue. *See Halprin*, 911 F.3d at 255.

### B. Childhood Exposure to Neurotoxins

Next, Cole moves for a COA on his claim that trial counsel provided ineffective assistance by failing to investigate and present evidence of his exposure to neurotoxins as a child and resulting brain damage. Cole argues that, due to this alleged ineffectiveness, "[t]he jury never learned that [he] suffers from organic brain damage that affects his decision making, impulse control, and ability to problem solve." Specifically, Cole says trial counsel should have known that "neuropsychological testing" was necessary to assess Cole's brain damage for four reasons: (1) Cole lived near Ecuadorian oil fields for several years; (2) a psychologist advised counsel to have a neuropsychologist examine Cole; (3) Cole began abusing alcohol as a child and continued doing so as an adult; and (4) Cole suffered significant head injuries as a child.

Cole concedes that he procedurally defaulted this claim by failing to raise it in the state habeas court. But he contends that his state habeas counsel's failure to raise this issue was itself ineffective assistance that establishes cause and prejudice to overcome the default. Where state law requires that ineffective assistance claims "be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, . . . counsel . . . was ineffective." *Martinez v. Ryan*, 566 U.S. 1, 17 (2012). This rule applies in Texas. *Trevino v. Thaler*, 569 U.S. 413, 429 (2013). Thus, to prevail on a COA request that

relies upon a procedural default, Cole "must show (1) that his claim of ineffective assistance of counsel at trial is substantial—i.e., has some merit— and (2) that habeas counsel was ineffective in failing to present those claims in his first state habeas proceeding." *Garza v. Stephens*, 738 F.3d 669, 676 (5th Cir. 2013). "Once cause has been established, [Cole] must then show 'actual prejudice.'" *Canales v. Stephens*, 765 F.3d 551, 562 (5th Cir. 2014) (quoting *United States v. Frady*, 456 U.S. 152, 167 (1982)).

The district court held that Cole could not overcome this default because he showed neither cause under *Martinez* nor actual prejudice. In its analysis, the district court considered affidavits from state habeas counsel and a neuropsychologist, Dr. Daniel Martell, that are not in the initial state habeas court record. After the district court issued its decision, however, the Supreme Court decided *Shinn v. Ramirez*, 142 S. Ct. 1718 (2022), which limited *Martinez*'s scope. In *Ramirez*, the Court held "that, under § 2254(e)(2), a federal habeas court may not conduct an evidentiary hearing or otherwise consider evidence beyond the state-court record based on ineffective assistance of state postconviction counsel." *Id.* at 1734. Instead, "a federal court may order an evidentiary hearing or otherwise expand the state-court record only if the prisoner can satisfy § 2254(e)(2)'s stringent requirements."[1] *Id.* at 1735.

---

[1] Under § 2254(e)(2), where a prisoner "has failed to develop the factual basis of a claim in State court proceedings," a federal habeas court may hold "an evidentiary hearing on the claim" only if the claim relies on "(1) a 'new' and 'previously unavailable' 'rule of constitutional law' made retroactively applicable by [the Supreme] Court, or (2) 'a factual predicate that could not have been previously discovered through the exercise of due diligence.'" *Ramirez*, 142 S. Ct. at 1734 (quoting §§ 2254(e)(2)(A)(i), (ii)). The prisoner must then "show that further factfinding would demonstrate, 'by clear and convincing evidence,' that 'no reasonable factfinder' would have convicted him of the crime charged." *Id.* (quoting § 2254(e)(2)(B)).

No. 21-70011

Cole does not argue that he can satisfy § 2254(e)(2). Rather, he contends that this claim does not require consideration of evidence beyond the state-court record. More precisely, he asserts that he "placed in the state-court record" the facts establishing the ineffectiveness of his state habeas counsel "through [his] subsequent application for habeas relief." In response, the state reiterates that the Texas Court of Criminal Appeals dismissed Cole's "subsequent application as an abuse of the writ without considering [its] merits." *Ex parte Cole*, 2020 WL 1542118, at *1. For that reason, the state argues that *Ramirez* bars this court from considering Cole's post-conviction evidence, which was not properly before the state court. *See Ramirez*, 142 S. Ct. at 1738–39 (rejecting efforts to "eva[de]" § 2254(e)(2) and stating that if a prisoner cannot satisfy that provision, a federal court cannot "consider new evidence … to assess cause and prejudice under *Martinez*") (citing *Holland v. Jackson*, 542 U.S. 649, 653 (2004)).

We need not resolve this dispute because, even if *Ramirez* does not bar consideration of Cole's new evidence, the district court's conclusion that he has not demonstrated cause for the procedural default under *Martinez* is not debatable. Cole emphasizes that although an expert advised trial counsel that neuropsychological testing could determine whether Cole's exposure to toxins in Ecuador caused him brain damage, trial counsel failed to arrange such testing. In addition, although Cole acknowledges that state habeas counsel retained a neuropsychologist—Dr. James Underhill—to evaluate him, Cole asserts that Dr. Underhill was not thorough. Cole also proffers the opinion of Dr. Martell, his new neuropsychologist, that Cole has "neuropsychological impairments" resulting from his childhood environment.

Reasonable jurists could not debate the correctness of the district court's determination that state habeas counsel was not ineffective for failing

11

to present similar evidence. As noted, Dr. Underhill evaluated Cole. Because Dr. Underhill did not recommend further testing, state habeas counsel did not further pursue this avenue of mitigation evidence. Contrary to Cole's arguments, that does not create a dispute among jurists of reason as to deficient performance. "It is generally not an unreasonable professional error for counsel to trust the opinions of mental health experts when deciding on what defensive theories to pursue." *Green v. Lumpkin*, 860 F. App'x 930, 938 (5th Cir. 2021) (per curiam), *cert. denied*, 142 S. Ct. 1234 (2022). To be sure, state habeas counsel later submitted affidavits impugning Dr. Underhill's work. But the record does not show that state habeas counsel harbored those concerns when they hired Dr. Underhill. And although Dr. Martell averred that Dr. Underhill's evaluation was incomplete, "[t]he very fact that an expert opinion is needed to determine whether [Dr. Underhill's] mental health evaluations were adequate indicates that any deficiency was not so obvious to a lay person that trial counsel's reliance was unreasonable." *Id.* at 939. Thus, Cole has not established that jurists of reason would debate cause for the procedural default, and we decline to grant a COA on this issue.

### C. Trial Court's Statements Regarding Automatic Review.

Finally, Cole seeks a COA on whether trial counsel was ineffective for not objecting to certain statements that the trial court made to venire members. During jury selection, the trial court explained to prospective jurors, many of whom ultimately served on the jury, that Cole's case would receive automatic appellate review if they sentenced him to death. In one instance, the trial court stated that "[e]very death sentence is an automatic appeal . . . . We want to make sure everything was done according to the law. So, in every death case, there is an automatic appeal . . . . Whether the defendant wants it or not, automatic appeal." In another instance, the trial court stated that "[i]f there is a death sentence, there is automatic review whether the defendant wants it or not. It's automatically reviewed if there is

a death sentence in a capital case." The trial court made these statements in response to questions from prospective jurors regarding the potential for appellate review.

Allegedly, these statements violated *Caldwell v. Mississippi*, which held that the Eighth Amendment makes it impermissible "to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere." 472 U.S. 320, 328–29 (1985). "To establish a *Caldwell* violation, a defendant necessarily must show that the remarks to the jury improperly described the role assigned to the jury by local law." *Dugger v. Adams*, 489 U.S. 401, 407 (1989). Cole says that by failing to make a *Caldwell* objection, trial counsel was ineffective.

Cole concedes that this claim is also procedurally defaulted because he did not raise it in the state habeas court. He argues, however, that cause for the default exists under *Martinez* because state habeas counsel was ineffective for not pursuing this claim.[2] The district court concluded that Cole failed to establish that state habeas counsel performed deficiently by not alleging a *Caldwell* violation and that *Martinez* was therefore inapplicable. That was because Texas courts have not extended *Caldwell* to remarks made during voir dire, the trial court correctly stated Texas law, and Cole did not allege that the trial court made any other purportedly misleading statements.

Jurists of reason could not debate the district court's conclusion that Cole lacks cause for the procedural default of this claim. First, as the district

---

[2] Cole originally supported his *Caldwell* claim with affidavits that are not in the initial state habeas court record. But considering *Ramirez*, he now asserts that this "issue is primarily based on the trial record." The district court did not address these affidavits during its discussion of this issue. In light of Cole's assurances that "there is no need for extra-record evidence to decide the *Caldwell* issue," we similarly limit our review to the initial state habeas court record.

court recognized, the Texas Court of Criminal Appeals has declined to apply *Caldwell* "to voir dire remarks." *Sattiewhite v. State*, 786 S.W.2d 271, 282 (Tex. Crim. App. 1989) (en banc). This court has also observed that remarks allegedly violative of *Caldwell* that "were made during voir dire" have a "greatly reduc[ed]" chance of having "any effect at all on sentencing." *Miniel v. Cockrell*, 339 F.3d 331, 343 (5th Cir. 2003) (quotation omitted). Second, the Constitution does not "prohibit[] the giving of accurate instructions regarding postsentencing procedures." *Caldwell*, 472 U.S. at 342 (O'Connor, J., concurring). And the trial court accurately described Texas's postsentencing procedures, which provide that "[t]he judgment of conviction and sentence of death shall be subject to automatic review by the Court of Criminal Appeals." Tex. Code Crim. Proc. art. 37.071 § 2(h). Third, Cole does not challenge as violating *Caldwell* any remarks that the trial court made during either the guilt or penalty phases of the trial. Instead, "[t]hroughout voir dire and during closing arguments the court and counsel repeatedly informed the jury that whether [Cole] received a death sentence would be based on the jury's answers to the special issues submitted to them at the end of the punishment phase of the trial." *Cotton v. Cockrell*, 343 F.3d 746, 755 (5th Cir. 2003). Thus, jurists of reason would not debate that "[Cole's state habeas] counsel was not constitutionally ineffective" for pursing other claims, *id.*, and Cole lacks cause for the procedural default. We therefore deny a COA as to this claim.

## IV. Conclusion

For the foregoing reasons, Cole's application for a COA is DENIED.